Babcock *v.* Bridge.

[CAYUGA GENERAL TERM, June 6, 1859. *T. R. Strong, Smith* and *Johnson,* Justices.]

BABCOCK *vs.* BRIDGE and others.

On the 12th of March, 1855, P. executed to B. a mortgage, which recited that B. had signed as surety for P. a note made by P. for $1500, dated on that day, and payable to the Rochester City Bank ninety days after date; and that B. had agreed with P. to sign as surety, or indorse, other notes for P. payable at the Rochester City Bank, or some of the other banks in Rochester, to an amount not to exceed $7000. The mortgage contained a condition that P. should indemnify B. and save him harmless against said note of $1500 and against all other notes which B. might sign as surety or indorse with or for P. On the 5th of July, 1855, B., at the request and for the accommodation of P., signed, as surety, a note made by P. for $1000, payable to W. or bearer, twelve months after date.

*Held* 1. That assuming that the note last mentioned was embraced in the condition of the mortgage, the mortgage was security to B. in respect to two classes of notes which he might sign or indorse for P.; first the note for $1000 already executed, payable at the Rochester City Bank, and other notes payable at any of the other Rochester banks, not in the whole to exceed $7000 ; and second, notes payable elsewhere, or not mentioning any place of payment, to an indefinite amount.

2. That the note of July 5, 1855, for $1000, belonged to the second class of notes, and that the mortgage, in reference to that note, must be regarded and treated precisely as if B. was indemnified, by the mortgage, only as to the second class of notes.

3. That in respect to that note the mortgage was not entitled to priority, under the recording acts, as against a junior mortgagee in good faith ; the defect in

such mortgage as constructive notice, under those acts, being that no limit to the extent of B.'s liability in regard to the second class of notes, was fixed ; that it might be increased indefinitely ; and that it afforded a dangerous facility for a fraudulent substitution of notes.

THIS action was brought to enforce a mortgage bearing date March 12, 1855, executed by Hiram Peets to the plaintiff, conditioned as follows :   •

" Whereas the said Alexander Babcock has this day signed as surety, a note bearing date the 12th day of March, 1855, executed by the said Hiram Peets and payable to the Rochester City Bank, for the sum of $1500 in ninety days after date.; and whereas the said Alexander Babcock has agreed to and with the said Hiram Peets, to sign as surety, (or indorse the same,) during the ensuing year, other notes for the said Hiram Peets, payable at the Rochester City Bank, or at some of the other banks in the city of Rochester, for such sum or sums as the said Hiram Peets may desire to raise, but not in the whole to exceed the said sum of $7000.   Now, therefore, the condition of this mortgage is such, that if the said Hiram Peets shall, from time to time and at all times hereafter, indemnify and save harmless the said Alexander against said note of $1500, and against all other notes which the said Alexander may sign as surety or indorse with or for the said Hiram Peets, and against all damages, costs and trouble which he may sustain or be put to by reason of the non-payment thereof, by the said Hiram Peets, then this conveyance shall be void."

The defendant Bridge became a junior incumbrancer to the amount of $5000 on the same premises, April 1, 1857.  S. M. and A. B. Spencer became junior incumbrancers Feb. 16, 1856, for any liability they might incur for Peets, by advances, indorsements or acceptances, and they, in May, 1858, enforced their mortgage for $1707.22, making Bridge a party, and sold the premises September 2, 1858.   These were bid off by Samuel M. Spencer, for that sum, who in consideration of the payment of it by Bridge, conveyed the premises to him.   The plaintiff sought to enforce the mortgage to him of March 12,

1855, in consideration of his having paid the following promissory note:

"*Pittsford, July* 5, 1855.

Twelve months after date, we jointly and severally promise to pay Roswell Wickwire or bearer, one thousand dollars, for value received, with interest.

(Signed)　　HIRAM PEETS.

A. BABCOCK, surety."

The complaint described the condition of the mortgage, omitting, or as not containing *the recital.* On the trial before the referee, the plaintiff's counsel proved the mortgage of March 12, 1855, containing the recital, and the defendants' counsel objected to its being read in evidence, on the ground of its not being the mortgage described and set forth in the complaint. And also objected to the reading in evidence the promissory note of July 5, 1855, as evidencing moneys secured by the mortgage of March 12, 1855.

The defendants' counsel insisted that the mortgage was not a valid and subsisting lien in favor of the plaintiff, on the said premises, for the moneys he had been compelled to pay by reason of signing the promissory note of July 5, 1855, as against the right and title of the defendant Bridge, as a junior incumbrancer, or purchaser of the premises. The referee decided that the mortgage was a good, valid and subsisting lien on the premises, in favor of the plaintiff, for his said liability, as against the right and title of the defendant Bridge, and ordered judgment accordingly; to which decision the defendants' counsel excepted; and from the judgment entered upon the report of the referee, the defendant Bridge appealed.

*Wm. H. Greene,* for the appellant. I. The recital contained in the mortgage is an essential and substantive part of the instrument, and the condition is to be construed and limited by it. That the recital is the proper key to the meaning of the condition; that the condition must be construed in reference to it; that when the words of an obligation import a

larger liability than the recital contemplates, these words will be restrained by the particular recital, are indisputable rules in the construction of such instruments. (*Hassel* v. *Long*, 2 *M. & Sel.* 363. *Peppin* v. *Cooper*, 2 *B. & Ald.* 431. *Sanson* v. *Bell*, 2 *Camp.* 30. *Payler* v. *Hamersham*, 4 *M. & Sel.* 423.) Language, however general in its form, when used in connection with a particular subject matter, will be presumed (in the construction of all instruments) to be used in subordination to that matter, and therefore to be controlled and limited accordingly. (*Story on Agency*, § 62, *applied to the construction of letters of attorney.*) Words of recital in a deed will constitute an agreement between the parties on which an action of covenant may be maintained. (*Severn* v. *Clerk*, 2 *Leon.* 122.) The recital in a deed of a previous agreement, is equivalent to a confirmation and renewal of the agreement. (*Saltoun* v. *Houstown*, 1 *Bing.* 433. *Sampson* v. *Easterby*, 9 *B. & Cress.* 505.)

II. Construed in the light of the recital, the general words of the condition are used in subordination to the particular contract there stated, namely : Babcock contracts with Peets to sign with, or indorse his notes as surety, to borrow money during the year, made payable at the Rochester City Bank— or on notes similar to the one recited. (1.) The recital discloses that on the day of the date of the mortgage, viz. March 12, Babcock had signed as surety a note made by Peets for $1500, payable to the Rochester City Bank in ninety days after date. (2.) That Babcock had agreed to sign as surety, or indorse, *other* notes for the said Peets, payable at the Rochester City Bank or at some of the other banks in the city of Rochester. (3.) That the object of this contract is to enable Peets to borrow money during the year in such sum or sums as he may desire. (4.) That the object of the transaction is not only a borrowing of money, but doing it on short paper payable at banks in the city of Rochester. The recital therefore deals with the promissory note then made, and secondly with the *other notes* of the same kind, as the particular sub-

ject matter of the contract by which the condition is to be limited and restrained. The condition is thus framed in reference to the particular subject matter. Instead of attempting to introduce a new subject matter, or to enlarge itself beyond the matters recited, the words of the condition are to secure Babcock " against the said note of $1500, and against all *other notes*," &c. The term " *other notes*," relates to the same term in the recital as significantly and necessarily as the term "*the said note of* $1500" does to the note of March 12, of $1500. The expression " other notes" in both recital and condition, are identical, and mean the notes of the same kind of that of March 12, which Babcock had agreed to sign, or indorse, as he had that day signed or indorsed the one described, for the purpose of borrowing money, which was the object of the whole transaction. When particular words are followed by general words, the rule in all kinds of contracts is to construe them as applicable to subjects *ejusdem generis.* (*See authorities cited ; also* 1 *Cowen*, 122 ; 1 *How.* 169, 184 ; 9 *Mass. R.* 235 ; 19 *John.* 97 ; 16 *id.* 110 ; 1 *Edw. Ch.* 34 ; 2 *How.* 426, 449 ; 18 *Pick.* 325.) The words " the said note," and " all the other notes," in the condition, have their respective antecedents clearly in the recital, and no rule of construction or logic allows either of those terms to be separated from its antecedents. Had the words " all other notes," in the condition, no antecedent in the recital, there would be a new subject matter introduced into it, plainly betokening the intention of the parties to extend the scope of it : for instance, had the recital stopped with the statement of the note of March 12, omitting the contract of Babcock to indorse " *other notes*" of a like kind, the use of the words " all other notes," in the condition after " *the said note of* $1500," would indisputably enlarge the scope of it by introducing a new subject matter. But now these words, " all other notes," have their representative in the recital, as much as " the said note of $1500"—and it becomes repugnant and impossible to construe these words as meaning more in the condition than they did in the recital. The condition there-

fore means to secure Babcock for just what his contract bound him to do, and nothing more or different, namely, to indorse Peets' notes, payable at the banks in the city of Rochester, on short time, during the year, for loaning money in such sums as suited Peets. The question is, what is the legal obligation of Babcock? Is it to sign or indorse any note not payable at the stipulated place, or for any purpose other than for the borrowing money in the way stipulated? There is no evidence even by parol, of any other contract or consideration at the time, as between mortgagor and mortgagee than what the recital discloses, and the security could not be kept alive by virtue of any subsequent agreement for other objects than those contemplated at the time of its creation. (*Truscott* v. *King*, 2 *Selden*, 147. *Mead* v. *York*, *Id.* 449.) (5.) The note in question does not come within the description of the notes which by the contract or the recital, Babcock would be bound to sign or indorse. The plaintiff does not show that it was given for the purpose of borrowing money, or but that it was given for the purchase of land, &c. It is payable to bearer at twelve months; four months beyond the year stipulated. It is payable at large and not at the place stipulated.

III. The contract thus recited as the consideration of the mortgage is an express written contract and cannot be enlarged or varied.

IV. Assuming the general words of the condition in the mortgage, to override the recital and to embrace *all other notes of any kind*, then if it has this scope and extent, the instrument as between a junior incumbrancer or purchaser and Babcock, is inoperative and void. Stripped of this recital or the legal effect of it upon the condition, the generality and uncertainty of the condition would enable the parties to use the security for other purposes than any at first contemplated, by a subsequent oral agreement, thus keeping it alive *ad infinitum*. No court would have the means of determining whether the object for which the mortgagee is enforcing it, was the object for which it was originally created. An in-

strument thus uncontrolled in its reach and construction, does not comply with the rule "that the agreement as contained in the *record of lien*, whether by mortgage or judgment, should give all the requisite information as to the extent and certainty of the contract, so that a junior creditor may by inspection of the record, and by common prudence and ordinary diligence, ascertain the extent of the incumbrance. (*Truscott* v. *King*, 2 *Selden*, 161.) The character of the liabilities is not given, because the specification of promissory notes does not denote it. Any liability in the whole circle of human affairs, may readily be put into that shape. This is not a sufficient specification of the foundation of the liabilities contemplated. Such an instrument, from its susceptibility of being used for any purpose the parties to it choose, evidences in the eye of the law their intention to do what they can do by means of it, namely, hinder, delay and defraud creditors. (24 *Barb.* 510.)

V. If not, however, inoperative and void as an insufficient notice to a junior incumbrancer, it only operates as notice to the extent of Babcock's liabilities; it showed he was under a legal obligation to sign or indorse.

*W. F. Cogswell*, for the plaintiff, insisted that the note in question was embraced in the condition of the mortgage, and that the judgment should be affirmed.

*By the Court*, T. R. STRONG, J. In the view I take of this case, it is not important to determine whether the note, for the collection of which the mortgage in question is sought to be enforced, is embraced within the general words of the condition of the mortgage. It is clear that it is not of the description of notes the defendant had agreed to sign as surety or indorse for Peets to a limited amount, according to the recital in the condition; as the latter were to be payable at the Rochester City Bank, or some of the other banks in the city of Rochester, and this note is payable at large. If it comes within the condition, it is because of the general language ex-

pressing that the mortgage is an indemnity against the note particularly described, which had been executed, "and against all other notes which the said Alexander may sign as surety or indorse with or for the said Hiram Peets," &c. Assuming then, that the condition embraces this note, the mortgage was security to the plaintiff in respect to two classes of notes which he might thus sign or indorse; one class comprehending the note already executed, which was payable at the Rochester City Bank, and other notes payable at one of the aforesaid banks, not in the whole to exceed a specified sum; the other class, including notes payable elsewhere, or mentioning no place of payment, to an indefinite amount. There is no evidence of an understanding between the plaintiff and Peets, when the note in question was signed by the plaintiff, in regard to its coming under the agreement, and forming part of the amount to which the plaintiff was to sign or indorse for Peets, if such evidence would have been admissible; and in the absence of evidence on that subject, this note must be deemed additional to the notes the plaintiff had agreed to sign or indorse; leaving the plaintiff bound to sign or indorse notes payable at the banks named, to the amount agreed upon, irrespective of the note in suit. If the plaintiff had signed or indorsed notes for Peets, of the description and to the amount specified in the agreement as recited, in addition to the present note, it cannot be doubted that the mortgage would have been available to him as security for his liability on all. It follows, therefore, that this note belongs to the second class of notes provided for by the mortgage; and that the mortgage in reference to this note must be regarded and treated precisely as if the plaintiff was indemnified only as to the second class of notes, by the mortgage.

Looking at the case in this aspect, the question arises, whether the mortgage, as to the note in suit, is entitled to priority under the recording acts, as against the defendant Bridges, a junior mortgagee in good faith. I think, under the decisions, it is not. The defect in the mortgage as con-

structive notice, under those acts, is that no limit is fixed to the extent of liability in regard to the second class of notes ; that it may be increased indefinitely ; and that it affords a dangerous facility for a fraudulent substitution of notes ; in short, that to allow such a mortgage to be valid, would effect-ually defeat the policy of the recording laws. In *Pettibone* v. *Griswold*, (4 *Conn.* 158,) a mortgage with a condition to se-cure a note particularly described, and "all other notes the said grantee might indorse for, or give for, said Griswold, at the bank or elsewhere, and all the receipts said Pettibone, de-ceased, might hold against said Griswold," was as to the "other notes," &c., void as against a junior incumbrancer, for substantially the reasons above stated. This doctrine is ap-proved in numerous cases, and supported by the most con-vincing reasoning, which it is unnecessary here to repeat. (*Truscott* v. *King*, 2 *Seld.* 147, 161, 166, *and cases therein cited. Also Youngs* v. *Wilson*, 24 *Barb.* 510, *and cases there cited.*)

My conclusion is, that the judgment should be reversed, and a new trial granted, with costs to abide the event.