# Bernstein *v.* Humes.

*Statutory Real Action in the Nature of Ejectment.*

1. *Adverse possession; what necessary to avoid deed made by one out of possession.*—While to avoid a deed to land executed by one out of possession, it is enough, if there be one in adverse possession, exercising acts of ownership, and claiming to be rightfully in possession, with or with-

[Bernstein v. Humes.]

out color of title, such adverse possession, to have this effect, must be actual, not constructive; and it must be marked by acts of dominion, such as the erection of houses, making valuable improvements, clearing lands, claiming ownership, or, by some other act, evidencing that the possession is under claim of right.

2. *Same; when possession under claim of right.*—Putting a tenant in possession, who erects a house thereon, and continues to occupy for a series of years, is, unexplained, a possession under claim of right.

3. *Same; what is actual possession and its effect as notice.*—Actual possession is an open, patent fact, which furnishes evidence of its own existence; and it is notice to all men contracting in reference to the property thus possessed, and is equivalent to actual notice of title, legal or equitable, or of the claim under which such possession is held.

4. *Actual adverse possession; what notice sufficient to avoid deed by one out of possession.*—In order to avoid a deed executed by one out of possession on the ground of an actual adverse possession by an another under claim of right, actual notice of such adverse holding is not required, but the notice implied from possession is sufficient.

5. *When right of possession in mortgagor subject to sale under execution; title of purchaser.*—Where a deed of trust conveying lands, executed to secure a series of bonds having several years to run, after reserving the possession and enjoyment of the premises in the grantor, provided that before the trustee could enter and take possession, there should be a delay of sixty days after default, a demand of payment, and a request from the holder of the bonds; and afterwards default was made, but the trustee did not take the steps necessary to entitle him to enter and take possession,—*held*, that the right of possession and enjoyment in the grantor was a valuable interest, a legal estate, which was subject to levy and sale under execution, and that the purchaser of that interest acquired such an estate as would support ejectment.

6. *When deed of trust not an outstanding title in a stranger.*—In such case the deed of trust is not such an outstanding title in a stranger as will defeat a recovery in ejectment by a plaintiff claiming under the purchaser at execution sale.

7. *When deed to land not void on its face for uncertainty.*—A sheriff's deed to a lot of land in a city which was sold under execution, and which is described in the deed as "part of lot seventeen, fronting on Gallatin street fifty feet, extending eastwardly seventy-three feet, as the property of said Isaac Jamison," is not, on its face, void for uncertainty, as it might be shown by extrinsic proof that the entire front of the lot on Gallatin street was only fifty feet; or that Jamison, at the time of the execution of the deed, owned a defined part of the lot fronting on said street, measuring fifty feet, and known "as the property of said Isaac Jamison."

8. *When deed void for uncertainty.*—But when such deed is considered in connection with extrinsic proof, showing that lot seventeen fronts on Gallatin street about one hundred and forty-seven feet, all of which had been conveyed to Jamison except about twenty-five feet, none of which is shown to have been disposed of by Jamison at the date of the execution of the deed; and it is not shown that the fifty feet front had ever been separated from the residue, or that there was any identification of any fifty feet front, known "as the property of said Isaac Jamison," the property is not sufficiently identified, and the deed is void for uncertainty.

9. *Identification of land in deed by extrinsic proof.*—When identification of land in a deed is sought to be established by extrinsic proof, it must be shown by proof of facts—facts still existing, or which are shown to have once existed. Opinion or conjecture as to the land intended to be conveyed will not do.

10. *When abstract charge error.*—Where the effect of an abstract charge, given by the court *ex mero motu*, though asserting a correct legal proposition, is, when considered in connection with the evidence, to mislead the jury, the giving of the charge is a reversible error.

[Bernstein v. Humes.]

APPEAL from Madison Circuit Court.

Tried before Hon. LOUIS WYETH.

This cause was decided at the December term, 1880, but has not been reported. The record in the case could not be found by the reporter. He has also endeavored to obtain the original bill of exceptions; but, as he was informed, that has also been mislaid or lost.. As the opinion, however, can be understood, on the important questions decided, from the facts stated in it, especially when aided by the facts appearing in the report of the case on former appeal (*Bernstein v. Humes et al.*, 60 Ala. 582), it is thought best to report it. Paragraph 5 of the general charge of the Circuit Court, and charges asked, numbered 1 and 1 B, referred to in the opinion, judging from their connection, raised the same question as was raised by paragraph numbered 4½ of the general charge, which is set out in the opinion.

It appears from the report of the case on former appeal, that this was a statutory real action, commenced on 12th July, 1871, by Mrs. E. C. Humes and others against Morris Bernstein; and that the lot sued for is thus described: "The following tract or parcel of land, situated in the city of Huntsville, in said county of Madison, known and described as follows: Part of lot number seventeen in the original plan of said city, fronting on Gallatin street, commencing on said street ninety-nine feet from the north-west corner of said lot number seventeen, and running thence southwardly along said street thirty-eight and one-half feet; thence eastwardly, and at right angles with said street, one hundred and sixteen and one-half feet; thence northwestwardly, on a line parallel with said street, thirty-eight and one-half feet; thence westwardly, at right angles with said street, to the beginning; also another part of said lot, commencing at the north-east corner of that part above described, running northwardly, on a parallel line with Gallatin street, ninety-nine feet; thence westwardly, and at right angles with said street, two feet; thence southwardly, and on a line parallel with said street, ninety-nine feet; thence eastwardly, at right angles with said street, to the beginning." As further shown by said report, "the premises sued for were situated in a square or block, which was bounded on the north by Clinton street, east by Jefferson street, south by Randolph street, and west by Gallatin street; and this square was subdivided, according to the original map of the city, into four lots, numbered 17, 18, 25 and 26, respectively; each lot measuring one hundred and forty-seven feet and six inches in width, and the same in length. Lot number seventeen was the north-west quarter of the square, and the defendant owned the north-west quarter of it.. The plaintiffs owned nearly the whole remaining part of the square,

[Bernstein v. Humes.]

their lands adjoining the defendant's on the east and south. Of the two fractional lots sued for, the one fronting thirty-eight and one-half feet on Gallatin street was the southern part of the premises claimed by the defendant, and the narrow strip, two feet in width, was on the east.   The main controversy was in reference to the large lot; the only question as to the other being, whether the division fence was on the proper line.   The plaintiffs claimed the premises sued for as a part of the property which once belonged to the 'Bell Tavern,' and afterwards, to the 'Huntsville Hotel Company;' and they deduced their title from the said company, under a deed from the United States marshal to L. P. Walker, as the purchaser at a sale under execution against the company, and a deed from said Walker to themselves."

It further appears from the opinion on the former appeal (60 Ala. pp. 598–9), that the deed from the Huntsville Hotel Company to Donegan and Hammond, as trustees, was executed on 1st June, 1861, to secure the payment of thirty-five thousand dollars of bonds which the company proposed to issue, with eight per cent. interest payable semi-annually; the principal of the bonds to be due and payable in five equal installments, of $7,000 each, "due on the first of January, from the years 1872 to 1876, each inclusive."

BRANDON & JONES, for appellant.—(1)  In ejectment plaintiff can not recover, unless he had, at the commencement of the suit, a legal, as distinguished from an equitable, title, and the right of possession.— *Williams v. Hartshorn*, 30 Ala. 211. He must recover on the strength of his own title, without regard to the strength or weakness of that of the defendant. *Brock v. Yongue*, 4 Ala. 584.   (2) The law-day of the mortgage executed by the Huntsville Hotel Company having passed, nothing but an equity of redemption remained in the company, and Walker, as purchaser at execution sale, took nothing but this equity.   This will not support ejectment.—*Bernstein v. Humes*, 60 Ala. p. 582; *Welsh v. Phillips*, 54 Ala. pp. 309, 317; *Barker v. Bell*, 37 Ala. 354; *Paulling v. Meade*, 32 Ala. 11; *Pryor v. Butler*, 9 Ala. 418; 31 Maine, 246; 13 Vt. 129.   (3) This deed constituted an outstanding title in a stranger. See authorities *supra*.   (4) Adverse possession of itself is notice of the title or claim under which the possession is held.—5 Peters, p. 402; 6 Pick. p. 172; 16 Ala. 596; 15 Ala. 372; 9 Ala. 409; 22 Ala. 156; Ang. on Lien, pp. 427, 481.   (5) The deed from the sheriff to Elliott, and those following it are void for uncertainty, and create a break in plaintiff's chain of title.   *Pollard v. Maddox*, 28 Ala. 321; *Boardman v. Reed*, 6 Peters, 328; *Capen v.*

[Bernstein v. Humes.]

*Glover*, 4 Mass. 305 ; 1 Greenl. on Ev. §§ 350, 300-1, 297.    (6)
The plaintiff must prove a continuous title, a complete chain ;
and if any of the deeds in the chain are void, lapse of time
will not prove them, and the whole title fails.  *Jenkins v.
Noel*, 3 Stew. 60 ; *Hathaway v. Clark*, 5 Pick. 490 ; 1 Greenl.
on Ev. §§ 25-6.

HUMES & GORDON, *contra.*—(1)  As against all persons ex-
cept the mortgagee and those claiming under him, the mort-
gagor is considered the owner of the land, *so long as he
remains in possession;* and if the mortgagee does not disturb
the possession of the mortgagor, a subsequent purchase from
the mortgagor is valid and effectual.—*Knox v. Easton*, 38
Ala. 345 ; *Doe v. McLoskey*, 1 Ala. 708 ; *Hitchcock v. Har-
rington*, 6 Johns. 290 ; 1 Hilliard on Mortg. Ch. VIII. p. 162,
§ 15.   (2) A claim of adverse possession, the statute of limita-
tions, or maintenance can not be invoked by a mere naked
trespasser.—*Badger v. Lyon*, 7 Ala. 564; *Doe v. Eslava*, 11
Ala. 1029 ; *Brown v. Lipscomb*, 9 Port. 472 ; *Hinton v.
Nelms*, 13 Ala. 222.   (3)  The deed from Acklen, sheriff, is
not void for uncertainty in description.—*Ellis v. Martin*,
60 Ala. 394 ; *Clark v. Few*, 62 Ala. 243 ; *Clements v. Pearce*,
63 Ala. 284; *Slater v. Breese*, 36 Mich. 77 ; *Reidinger v.
Cleveland Iron Co.* 39 Mich 30.

STONE, J.—When this case was before in this court, 60
Ala. 582, 602, we said :  "To avoid a deed made by one out of
possession, it is enough if there be one in adverse possession,
exercising acts of ownership, and claiming to be rightfully in
possession.   Color of title is not necessary."   We fortified that
opinion by a citation of many authorities.   Possession, to have
this effect, must be actual, not constructive.   And it must be
marked by acts of dominion, such as the erection of houses,
making valuable improvements, clearing lands, claiming own-
ership, or by some other act, evidencing that the possession is
under claim of right.   Putting a tenant in possession, who
erects a house thereon, and continues to occupy for a series of
years, is, unexplained, a possession under claim of right.   Much
less than this would be sufficient evidence in many cases of
adverse holding.   Actual possession is an open, patent fact,
which furnishes evidence of its own existence.   It is notice to
all men contracting in reference to the property thus possessed,
and is equivalent to actual notice of title, legal or equitable, or
of the claim, under which such possession is held.—2 Brick.
Dig. 519, § 181.

In paragraph numbered 4½ of the general charge, the Cir-
cuit Court correctly declared that "no one can sell land which

another has in adverse possession under claim of right." He erred when he informed the jury that this rule does not "apply, when the true owner sells the property in ignorance of such adverse holding." The natural and necessary effect of such charge was, to give the jury to understand that to render the rule applicable, the seller must have had notice or knowledge of the adverse holding, other than the actual possession gave him. The concluding clause of paragraph 5 of the general charge is equally erroneous. And charges asked, numbered 1 and 1 B, should have been given.

The question of outstanding title in another. It is true the record shows fully that the property in controversy, if embraced in the tract of the Huntsville Hotel Company, was under mortgage or trust deed to another, to secure bonds and accrued interest, which had matured when this suit was brought. Hence, the hotel company was in default. The mortgage or trust deed contains the following clauses: "But nothing herein contained shall be construed so as to prevent the Huntsville Hotel Company from using the building for hotel purposes, renting, and receiving payment therefor, of any part of such hotel building, not necessary for the hotel, nor from disposing of any part of the lot or grounds upon which said building is situated, which may not be required for the use of said hotel, nor from using any furniture, stores or fixtures which may be necessary in conducting the business of said company, or from collecting and paying out all or any moneys that now is, or hereafter may be due said company, provided that no default shall have been made in the payment of the interest and · principal of any of the described bonds. . . . . Upon the following trusts, that is to say : In case the said Huntsville Hotel Company shall fail to pay the principal, or any part thereof, or any of the interest on said bonds, at any time when the same may become due and payable, according to the tenor thereof, when demanded, then after sixty days from such default, upon the request of the holder of such bonds, the said Donegan and Hammond—[grantees and trustees]—and their successors in such trust, may enter into and take possession of all or any part of said premises," etc. It will be seen from these extracts from the trust deed, that the right of the Huntsville Hotel Company to retain possession of the property did not terminate *ipso facto* with their default in paying the principal or interest of the bonds. There must have been, first, a demand of such payment, second, a request of the holder of such bonds, and, third, a delay of sixty days after such default, before the trustees would be authorized to enter into and take possession. None of these steps are shown to have been taken, and therefore it is not shown that the right

[Bernstein v. Humes.]

of the hotel company to possess and occupy has ever terminated. This was a valuable interest, a legal estate, and was subject to levy and sale under execution. The purchaser of such interest, until it is determined, acquires such estate as will support ejectment. *Brock v. Yongue*, 4 Ala. 584; *Badger v. Lyon*, 7 Ala. 564; *Smith v. Taylor*, 9 Ala. 633; *Br. Bank v. Fry*, 23 Ala. 770; *Knox v. Easton*, 38 Ala. 345; 1 Brick. Dig. 905, § 207. The Circuit Court did not err in holding there was a failure to show an outstanding title in a stranger which could defeat this action.

It is settled law—too well settled to require a citation of authorities—that in an action of ejectment, or statutory real action, plaintiff can not recover unless he shows a sufficient legal title in himself, or a right to the possession. The defendant may have no title, may be a mere trespasser; still, if he has not entered as the tenant of plaintiff, and thus recognized his title, it is sufficient for his defense that plaintiff shows no right to recover. An older possession often proves title against one who shows only a later possession, but this rests on the presumption that one who has had a prior possession of land, exercising acts of ownership and control, is treated as the owner against such subsequent occupant, unless the latter shows title in himself, or some other, or unless he has held the possession adversely for a sufficient length of time to bar the plaintiff's right of entry. In this case the laboring oar was with the plaintiffs, Humes *et al.* The suit is to recover a part of lot 17 in the city of Huntsville. The deeds through which plaintiffs attempt to deduce their title, describe lot 17 as containing a half acre. It is bounded north on Clinton street, and west on Gallatin street. If the lot is a square, each of its four sides is about one hundred and forty-seven feet and eight inches in length. The plaintiffs in this case do not, as we understand the case, rely on previous possession in those under whom they claim. They rely on a documentary chain of title, commencing as far back as 1816. There was then a deed from Pope to Cannon, conveying lot 17, town of Huntsville, fronting Clinton and Gallatin streets, described as "a certain parcel or half acre of land." Deed, December 18th, 1818, from Cannon to Price, conveying same lot by same description. Deed, November 23rd, 1822, from Price to Stokes, conveying same lot by same description, "*with the reserve of twenty-five feet fronting on Gallatin street where the brick house stands, running back seventy four feet nine inches, at right angles.*" Deed, February 4th, 1823, from Stokes to Rogers, conveying same lot with same description, and same reservation. Deed, January 31st, 1826, from Rogers to Jamison, conveying same lot with same description and same reservation. Title is thus traced, and

vested in Jamison, of all of lot seventeen, except the part reserved, described above. The title to the reserved part, having the brick house on it, is left in Price, so far as this record informs us; or, rather, the record fails to inform us the title to that part ever got out of him. The next step in plaintiffs' chain of title is a sheriff's deed, dated April 2nd, 1832, conveying to Elliott "part of lot seventeen, fronting Gallatin street fifty feet, extending eastwardly seventy-three feet, as the property of said Isaac Jamison, etc." Deeds, conveying lands by similar description, from Elliott to Sadler, dated March 4th, 1833—from Sadler to Horton, April 7th, 1834,—Horton and Robinson to Caldwell, August 18th, 183°,—Caldwell to Yeatman and wife, February, 22d, 1839,—Yeatman and wife to Erwin, September 7th, 1840,—Yeatman and wife to Turner, February, 23rd, 1839,—Turner, trustee, to Wood, October 1st, 1844, conveying several pieces of property, and among the rest, "part of lot bought by said Caldwell of Rodah Horton and wife and John Robinson and wife, and by them conveyed to the said Caldwell; the above property embraces, and is intended to embrace the establishment in the town of Huntsville known as the Bell tavern, now occupied by the said Agnes Yeatman, and kept by her as a hotel." From Wood and wife to Kinkle, October 21st, 1847, after describing other lands (the hotel property), conveying same lot with same description, as that found in sheriff's deed to Elliott—Kinkle to Lane & Davis, June 5th, 1851, conveying several lots, and the same lot described as in sheriff's deed to Elliott. From Davis to North Alabama College, March 4th, 1852, conveying several lots and the lot as described in the sheriff's deed aforesaid. From North Alabama College to Huntsville Hotel Company, April 16th, 1857, conveying several lots, and with them part of lot seventeen, described as above. Deed of U. S. marshal to Walker, February 7th, 1870, conveying lots 17, 18, 25 and 26, and the improvements thereon; and Walker to plaintiffs, May 22nd, 1871. The chain of title shown by plaintiffs left all of lot 17 in Jamison, except the reserve of twenty-five feet front on Gallatin street, running back seventy-three feet, and except the fifty feet front on Gallatin street, running back seventy-three feet, conveyed by sheriff to Elliott.

Defendant's chain of title to that part of lot 17, which it is alleged was conveyed by sheriff to Elliott, and fronting on Gallatin street fifty feet, is as follows: Deed from Mrs. Hill to Battle, April 9th, 1858, conveying part of lot 17, " commencing at the north-west corner of the little brick house on Gallatin street, running thence eastwardly, at right angles with said street, and parallel with Clinton street seventy-four and one-half feet—thence at right angles to Clinton street—thence

west to the north-west corner of said lot, thence south along Gallatin street to the beginning, being about sixty-seven feet, containing not quite one-eighth of an acre;" a second piece, lying east of above, not necessary to be here described; and "also another lot of land lying in said town, being part of said lot number seventeen, bounded on the north by lot first above described, on the east by the lot last above described, on the south by the Bell tavern lot, on the west by said Gallatin street, supposed to front on said street about twenty-five feet, and to run back east about seventy-four feet." Deed of Battle and others to Chappell, December 20th, 1861, conveying same premises, with same description, with disclaimer of warranty as to piece last above described. Deed from Chappell to Bernstein, December 21st, 1861, conveying same lands, with same description, and same disclaimer of warranty. These conveyances tend to show the following facts: That the north-west corner of the little brick house stood sixty-seven feet south of the north-west corner of lot 17; that the lot on which the brick house stood fronted twenty-five feet on Gallatin street; that Bernstein's entire front on Gallatin street—including the little lot on which the brick house stood—was sixty-seven feet plus twenty-five—ninety-two feet, and that adjoining to it on the south was the Bell tavern property; thus showing that the Bell tavern property extended north on Gallatin street to a point ninety-two feet south of the north-west corner of lot seventeen. The property recovered in this suit is south of that point, and hence, Bernstein fails to show any title to the property in controversy. There is great contrariety, if not conflict in the testimony, as to the particular locality or spot on which the little brick house stood. The probable great length of time since its demolition or removal, may, to some extent, account for this. We attach more importance to the expressed distances in the deeds, than to the recollection of witnesses. But, as we have said, the plaintiff must recover, if at all, on the strength of his own title, not on the weakness or absence of his adversary's.

It is contended for appellant that the deed from the sheriff to Elliott, and those which follow it, are so indefinite in the description of the property sold and attempted to be conveyed, as to be void for uncertainty. This can hardly be affirmed, as matter of law, on the face of the deeds. True, they speak of part of lot seventeen, showing that the whole of that lot was not embraced in it. But we can not judicially know the extent of that lot's front on Gallatin street. Its entire front on that street, looking alone to the deed, may have been only fifty feet. Or it may be that Jamison, at that time, owned a defined part of the lot fronting on Gallatin street, measuring fifty

feet, and known " as the property of said Isaac Jamison." If so, then outside proof of such fact would enable any competent surveyor to determine and locate the land sold. We are speaking of the deed itself, without reference to extrinsic proof. So considered, it can not be pronounced void on its face. Considered in connection with the extrinsic proof, the question is a very different one. Lot 17 fronts on Gallatin street about one hundred and forty-seven or eight feet. All of this property was conveyed to Jamison, except about twenty-five feet on which the brick house stood. He thus owned about one hundred and twenty-two feet on Gallatin street. The bill of exceptions states it contains all the evidence, and there is·no evidence that the fifty feet front has ever been separated from the residue, or that there was any identification of any fifty feet, known as the property of said Isaac Jamison. There is an absence of proof that at the time the sheriff sold to Elliott, Jamison had disposed of any part of lot 17. True, at that time, a part of lot 17 was occupied and claimed by others, probably rightly claimed ; but it is not shown that Jamison had conveyed any part of the lot. The part we speak of as being occupied and claimed by others, fronts on Clinton street, and is different from the part, the title to which we are now discussing. Construing the deed from the sheriff to Elliott, and the later deeds which copied its phraseology, in the light of the testimony in this record bearing on the question, we do not think it sufficiently identifies the property. Identification must be established by the proof of facts—facts still existing, or which are shown to have once existed. Opinion or conjecture of wha was intended, will not do.—*Miller v. Travers*, 8 Bing. 244; *Pollard v. Maddox*, 28 Ala. 321.

In the affirmative charge is the following language : " If you believe from the evidence that Jamison owned lot No. 17, one side of which was on Gallatin street, and that he had previously sold all of said lot on Gallatin street that he owned but the fifty feet, and that that portion was known as the Jamison lot, then you may look to that evidence to guide you to a conclusion, whether or not the fifty feet fronting on Gallatin street, mentioned in Acklen's [sheriff's] deed, included or not the lot, or portion of land described in plaintiffs' complaint." This part of the charge was specially excepted to. As we have said, the record affirms it contains all the evidence, and it contains no testimony that Jamison had previously sold any part of lot 17 fronting on Gallatin street. Neither does it contain any evidence that the part of the land in controversy " was known as the Jamison lot." This charge, then, was abstract, because some of its predicates are unsupported by testimony. If an abstract charge, though asserting a correct legal proposition,

when considered in connection with the evidence, must have misled the jury, this is ground of reversal.—*Partridge v. Forsyth*, 29 Ala. 200. The finding of the jury in this case shows the jury were misled by this abstract charge. The giving of it was, therefore, error.

Reversed and remanded.

BRICKELL, C. J., not sitting.