BRIGHT *v.* BUCKMAN *et al.*

*(Circuit Court, N. D. Florida.* April 15, 1889.)

**1. MORTGAGES—LIEN—NOTICE OF PRIOR GRANTEES.**

At the time of the execution of a mortgage persons were in possession of several of the parcels of the land mortgaged, claiming under contracts of purchase from the mortgagor, and had paid part of the purchase money. Some had built fences around their lots, and were cultivating them. Others had built houses on theirs, and were living in them. *Held,* that their possession was sufficiently open and patent to put the mortgagee on inquiry, and to charge him with notice of all that he might have learned by such inquiry.

**2. SAME.**

Nor is the mortgagee entitled to a lien for the portion of the purchase money unpaid at the time the mortgage was recorded. in the absence of actual notice of the mortgage to the purchasers, as under McClel. Dig. Fla. p. 215, § 6. the recording of a mortgage is only notice to subsequent purchasers and creditors.

**3. SAME—MORTGAGEABLE INTEREST.**

The mortgagor had purchased the land conveyed by the mortgage, but the vendor retained the deed subject to the payment of the purchase price. At the time of the execution of the mortgage he had neither title nor possession. Afterwards he offered to sell the land to D.. as the property of his vendor, giving no notice of the mortgage, but furnishing an abstract showing the title in the vendor. D. purchased the land, and received upon payment of the purchase money the unrecorded deed to the mortgagor and a deed from the latter, both of which were recorded. *Held,* that the mortgagor had no mortgageable interest in the land, and that D. was not bound by the record of the mortgage.

**4. SAME—DESCRIPTION—REFORMATION.**

A mortgage described two lots as "lots 13 and 14 of Burbridge's addition." The bill for foreclosure alleged that it was the intention to convey "lots 13 and 14 of block 1, in Burbridge's addition to Jacksonville." It appeared that there were 10 blocks in Burbridge's addition to Jacksonville, each containing lots numbered 13 and 14. While the record showed that the mortgagor had title at the time of the mortgage to lots 13 and 14 of block 1, it also showed that he had in some manner dealt with lots 13 and 14 in block 2, and had at one time given a mortgage on them. *Held,* that the description was too indefinite to afford any notice to a subsequent *bona fide* purchaser of lots 13 and 14 in block 1, and that the mortgage would not be reformed as against him.

In Equity. Bill for foreclosure of mortgage.

In September, 1883, Elwood H. Buckman executed a mortgage to one Haynie to secure a loan of $1,500, which, in November, 1886, Haynie assigned to complainant. This mortgage covered 400 acres of land in Sumter county, Fla. In March, 1884, said Buckman executed another mortgage to one Hayes, to secure a loan of $6,000, which was assigned by Hayes to complainant in September, 1884. This mortgage covered the same 400 acres of land; certain lots therein described as in Jacksonville, eight acres of land on St. John river near Jacksonville, and two lots in a suburb of Jacksonville, described in the mortgage as "lots 13 and 14, Burbridge's addition," all in Duval county, Fla., save said 400 acres. Said mortgages were duly recorded. After the execution and recording of these mortgages Buckman conveyed to the other defendants different portions of said mortgaged premises. As to the 400 acres there is practically no controversy. A portion of the 400 acres is subject to the lien of both mortgages. Certain of the defendants, who purchased lots in Jacksonville from Buckman, resist the foreclosure of the Hayes mortgage on their lots upon the ground that they were in possession of the several lots claimed by them under contracts to purchase them from Buckman before and at the time of the execution of the mortgage by Buckman to Hayes. The defenses set up by the other defendants are fully noticed in the opinion of the court. Buckman died after this bill was filed, and the suit revived against his personal representative.

*Cooper & Cooper*, for complainant.

*J. W. Archibald, Geo. I. Kain, Jos. E. Lee*, and *Walker & L'Engle*, for defendants.

TOULMIN, J. "The possession of land by a third person is said to put a purchaser upon an inquiry; and he is charged with notice of all that he might have learned by a due and reasonable inquiry. A purchaser who is thus put upon inquiry is bound to inquire of the occupant with respect to every ground, source, and right of his possession. Anything short of this would clearly fail to be "due and reasonable inquiry." 2 Pom. Eq. Jur. § 616, and note at bottom of page 55; 1 Jones, Mortg. § 601; *Kerr* v. *Day*, 14 Pa. St. 112; 2 Pom. Eq. Jur. § 607, and note at bottom of page 45; *Witter* v. *Dudley*, 42 Ala. 616. Actual possession of land is constructive notice of ownership, or of an interest, and such notice is sufficient to put creditors and purchasers on inquiry. *McRae* v. *McMinn*, 17 Fla. 886; *Hyer's Ex'rs* v. *Caro's Ex'x*, 18 Fla. 694. "The possession must be actual. It must be marked by acts of dominion, such as the erection of houses, making valuable improvements, claiming ownership, or by some other act evidencing that the possession is under claim of right. Actual possession is an open, patent fact, and it is notice to all men contracting in reference to the property thus possessed, and is equivalent to actual notice of title, legal or equitable, or of the claim under which such possession is held." *Bernstein* v. *Humes*, 71 Ala. 260; *Doolittle* v. *Cook*, 75 Ill. 354. The testimony shows that defendants, William Young, James Calhoun, Lawrence Ely, James W.

Caswell, Anthony Grayson, and Gus Jackson, had actual possession of their respective lots, claiming title to the same prior to, and at the time of the execution of, the mortgage on said lots, which it is here sought to foreclose. Ely had received a deed for his lot, and had built a fence around it. Caswell had had his lot staked off for him by his vendor, E. H. Buckman, (who is the mortgagor,) and had inclosed it with a fence. All the other said defendants had built houses on their lots, and were living in them, except one, and he had his lot inclosed with a fence, and was cultivating it in growing vegetables thereon. Hayes, the mortgagee, says in his deposition that "he did not speak to the men in possession of the lots in regard to them." He further says that he "really considered other property included in his mortgage good enough for his loan, without anything else, and paid no particular attention to the lots in question. Nothing more than just riding around with Buckman, but made inquiries as to the other property, viz., 4 houses and lots near the new Episcopal church. Went more on these four houses than anything. These were sure and tangible." And J. G. Long, the attorney and representative of the complainant, Bright, in taking the assignment of the Hayes mortgage, says he "visited and looked at the property, and found each piece of it occupied," and he "did not ask the tenants anything about the property, but took Buckman's statement altogether." The evidence satisfies me that the possession of these defendants was an open, patent fact, and that Hayes and his assignee, the complainant, had notice thereof, and that they did not make "due and reasonable inquiry." They are charged with notice of all that they might have learned by "due and reasonable inquiry." Subsequent to the execution of the mortgage these defendants, except Lawrence Ely, received from Buckman deeds to their respective lots. Irrespective of the testimony of the defendants as to their transactions with said Buckman, the evidence is sufficient to show that they were in possession of the lots under agreements to purchase, and had paid a part of the purchase money at the time the mortgage was executed. They continued to make payments to Buckman until the purchase money was all paid up and deeds were executed by Buckman to them. But it is contended by complainant that he is, at all events, entitled to a lien on said lots to the extent of the purchase money unpaid at the time of the recording of the mortgage; that the payments made to Buckman subsequent to the mortgage should have been made to him or to his assignor, Hayes. This would be true if the defendants had notice of the execution of the mortgage at the time of making such payments. But the proof shows they had no such notice. They had no actual notice, and without this they might lawfully complete their payments to Buckman without becoming liable to the mortgagee. It is true, the mortgage was recorded before many of the payments were made. But "the recording of a mortgage affords no notice whatever to a prior purchaser of the land, who is in possession under a bond for a deed, so that the mortgagee had constructive notice of his rights." 1 Jones, Mortg. § 562; *Doolittle* v. *Cook*, 75 Ill. 354; *Trustees, etc.*, v. *Wheeler*, 61 N. Y. 88. Under the statutes of Florida

the recording of the mortgage is notice to subsequent purchasers and creditors only. McClel. Dig. p. 215, § 6.

As to the lot claimed by the defendant Andrew Gibson, it appears from the evidence that he was not in possession of the lot at or before the execution of the mortgage, and that he received his deed long subsequent thereto. The mortgage described two lots of land as "lots 13 and 14 of Burbridge's addition." The bill alleges that the intention was to mortgage "lots 13 and 14 of Block 1, in Burbridge's addition to Jacksonville." The answer of defendant Cook, who is now the owner of said last-described lots, denies this allegation, and that the mortgage covered these lots. The proof shows that there are 10 blocks in Burbridge's addition to Jacksonville, each containing lots numbered 13 and 14, and that there are 6 blocks in Burbridge's addition to La Villa, each containing lots numbered 13 and 14. The evidence tends to show that, so far as is disclosed by the public records, E. H. Buckman had, at the time he executed the mortgage, title to no other lots numbered 13 and 14 except lots 13 and 14, in block 1, of Burbridge's addition to Jacksonville, but it further tends to show that he had in some manner dealt with lots 13 and 14, in block 2, of Burbridge's addition to Jacksonville, and had at one time given a mortgage to other parties on the last-named lots. A bill for the foreclosure of a mortgage should so describe the mortgaged property that if a sale is ordered the officer of the court may with certainty and safety execute the decree, and that the purchasers may be informed of the particular premises which are exposed to sale, and which they can acquire. *Hurt* v. *Freeman*, 63 Ala. 335. The mortgage is not certain in its description of the lots in question, and, construing it in the light of the testimony in the record on the subject, I do not think it sufficiently identifies the property. The bill seeks a foreclosure as to lots 13 and 14 of block 1 in Burbridge's addition to Jacksonville, treating these lots as the lots intended to be mortgaged by Buckman by his mortgage of "lots 13 and 14 of Burbridge's addition," and the bill alleges that these were the only lots owned by Buckman when he executed the mortgage answering the description contained in the mortgage, and that this must have been known to Cook when be bought the property. And the contention of complainant is that there was enough in the record to put Cook upon notice and inquiry, and to charge him with notice of what lots were intended by the description in the mortgage. The bill prays for a decree of foreclosure against these lots as they are described in the bill, and complainant suggests that if a reformation of the mortgage is necessary, the court will grant such reformation in the decree of foreclosure, the prayer for general relief being sufficient for that purpose. As my opinion is that the mortgage is not sufficiently certain to identify this property, a reformation is needed to carry out the specific relief prayed, which is foreclosure and sale. The mortgagee may ask for a reformation of the mortgage in a bill to foreclose it. 1 Jones, Mortg. §§ 98, 99; 2 Jones, Mortg. § 1464; *Alexander* v. *Rea*, 50 Ala. 450. A mistake in the description of the land may be corrected as between the parties to the mortgage, and courts of equity can grant relief as against

one who purchased the property with notice of the mistake; for a purchaser with notice stands in no better position than the mortgagor himself. But in the exercise of this jurisdiction the court must proceed with the utmost caution, imposing on the party complaining the burden of proving the alleged mistake by clear, exact, and satisfactory evidence, and resolving against him whatever of doubt or uncertainty the evidence may generate. *Campbell* v. *Hatchett*, 55 Ala. 548; *Hinton* v. *Insurance Co.*, 63 Ala. 488. And when such proof is made the relief cannot be granted as against one who had purchased *bona fide*, and for a valuable consideration; that is, for a valuable consideration without notice of the alleged mistake. The proof shows that Cook purchased for a valuable consideration. It does not show, and it is not claimed, that he had actual notice of the mistake or error; but the contention is that there was enough on the record to charge him with notice, and that, besides this, he bought the lots at an inadequate price, which of itself was a suspicious circumstance sufficient to put him upon an inquiry as to the reasons for selling the property at less than its apparent value. I do not think the inadequacy of price, as shown by the evidence, was sufficient notice, or was sufficient to put him upon an inquiry. The description of the property upon which the mortgage is an incumbrance must be such as reasonably to enable subsequent purchasers to identify the land; otherwise the record of the mortgage is not notice of any incumbrance upon it. If the description in the mortgage is erroneous, and it is apparent what the error is, the record is constructive notice of the mortgage upon the lots intended to be described; but if it is not apparent what the error is, then the record is not constructive notice. And while parol evidence is admissible to identify the land intended where there is an ambiguity or uncertainty in the description, yet a purchaser, who is not able from his knowledge of the property to interpret an erroneous description and give it the meaning intended, is not charged with notice from the record of it. The premises should at least be so described or identified that a subsequent purchaser would have the means of ascertaining with accuracy what and where they were. The language both of the mortgage and of the record of it must be such that if a subsequent purchaser should examine the instrument itself he would obtain thereby an actual notice of all the rights which were intended to be created or conferred by it. See 1 Jones, Mortg. §§ 528, 529; 2 Pom. Eq. Jur. § 654, and note 1; *Youngs* v. *Wilson*, 27 N. Y. 351; *Babcock* v. *Bridge*, 29 Barb. 427. I find that the mistake or error in the description of the lots in question is not apparent on the face of the mortgage, and hence that the record of it was not constructive notice of the mortgage upon the lots intended to be described as is claimed; and it does not appear from the testimony that Cook had such knowledge of the property as to enable him to interpret the erroneous description, and give it the meaning intended. The lots were not so described or identified that Cook had the means of ascertaining from the mortgage with accuracy what and where they were. Besides this, the evidence that there was a mistake or error, and what it was, is not clear, exact, and satisfactory. In the

absence of such evidence a court of equity will not reform the mortgage.

The mortgage which is here sought to be foreclosed covers eight acres of land owned by one Jos. E. Dritina, purchased by him from the mortgagor, Buckman, in October, 1885, being about 18 months subsequent to the execution of the mortgage by Buckman to Hayes. The facts are that in 1880 the title to these eight acres was in one H. Bisbee, and he contracted to sell them to one Whitney, allowing him two years within which to pay the purchase money. · In 1881, not having paid the purchase money, Whitney contracted with Buckman to sell to him this land, giving a year for payment. In 1883 Bisbee, at Whitney's request, executed a deed to Buckman, but retained it in his possession subject to Buckman paying him $900 for the land. In 1884, not yet having paid Bisbee, and without title or possession of the land, so far as the evidence shows, Buckman gave Hayes the mortgage, and it was recorded. In 1885 Buckman showed Dritina the land, and proposed to sell it to him, giving him no notice of the mortgage, but furnishing him an abstract showing the title in Bisbee, telling Dritina that the property was Bisbee's, and that he (Buckman) wished to make a commission on the sale. Dritina, after some delay, bought the land, paying Buckman $1,500 for it, and at the same time received Buckman's deed to him and Bisbee's unrecorded deed of April, 1883, to Buckman, (both warranty deeds,) which he placed on record. It appears from the evidence that Dritina gave Buckman the $1,500. Out of this Buckman paid Bisbee the $900, and then received Bisbee's deed, and executed and delivered his own deed to Dritina, as aforesaid. My opinion is that on the undisputed facts Buckman had no mortgageable interest in the land at the time he executed the mortgage, and that Dritina is not bound by the record of the mortgage made by Buckman before he had title to or a mortgageable interest in the land, and, as it is conceded that the statute of 6 Anne does not apply in this case, it follows that complainant is not entitled to relief as against defendant Dritina and his grantees, defendants Gifford and Pearce. 1 Jones, Mortg. § 576, and note 3; 2 Pom. Eq. Jur. § 761. The deed of defendant Mathews to a portion of the 400-acre tract of land is subject to the first mortgage of $1,500, but anterior to second mortgage of $6,000. If the 400 acres bring more than enough to satisfy the first mortgage, this defendant's lot will be let out. If not, it must be sold. A decree will be entered in accordance with the foregoing opinion.