# Clark *v.* Snodgrass.

*Bill in Equity to enforce Trust in Lands, under Parol Contract, in nature of Bill for Specific Performance.*

1. *Specific performance of contract; when decreed.*—To maintain a bill for the specific performance of a contract, the complainants must have a common right to relief, which must be clearly and distinctly charged in the bill, and clearly proved as charged : if the averments are vague and indefinite, or the proof is uncertain, no relief can be had.

2. *Adverse possession, by purchaser from trustee; how available.*—A purchaser of lands at a sale made by a trustee under a deed of trust, taking possession under his purchase, becomes an adverse holder as against persons who claim an equity in the lands under a prior verbal contract with the grantor who executed the deed of trust, although the purchaser had notice thereof ; and such possession being continued uninterruptedly for more than ten years, it is available at law to maintain or defeat an ejectment, or may be asserted in equity by demurrer to a bill which seeks to enforce the agreement or equity.

3. *Homestead exemption; repeal of law.*—A claim to a homestead exemption is worthless, when not asserted until after the repeal of the law which conferred it.

APPEAL from the Chancery Court of Jackson.

Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 26th September, 1876, by William C. Clark and others, children and heirs at law of Isaac Clark, deceased, against John Snodgrass, James M. Gullatt, and others; and sought to enforce an alleged trust or equity in a tract of land, of which said Snodgrass was in possession, or to have him declared a trustee of the legal title for the benefit of the complainants, and an account of the rents and profits of the land against said Snodgrass and Gullatt each, during their possession thereof respectively. It appears from the allegations of the bill, and the exhibits thereto, that the entire tract of land, containing about four hundred and eighty acres, belonged to said Isaac Clark, who died during the year 1860. On the 18th July, 1838, said Isaac Clark conveyed a portion of said tract of land, particularly described in the conveyance, and containing about three

[Clark v. Snodgrass.]

hundred acres, to his daughter Jerusha, who afterwards married James M. Gullatt, one of the defendants. The deed recited the payment of a valuable consideration; but the bill alleged that it was without consideration, and was executed with the intention to hinder, delay and defraud the creditors of the grantor; and that the grantee, at the time said deed was executed and delivered to her, leased the lands to the grantor, by written lease, for the term of ninety-nine years, with the right of immediate possession. On the same day, the 18th July, 1838, and with the same fraudulent purpose, said Isaac Clark conveyed another portion of said land, containing about one hundred and sixty acres, to William C. Clark, his son; but the bill alleged that this deed was never delivered nor accepted. In 1840, several judgments were rendered against said Isaac Clark; one in favor of the Branch Bank at Decatur, for over $700; two in favor of W. A. Austin, for about $300; and one in favor of Coffee & Bradford, for about $320. Executions were regularly issued on these judgments, and levied on said tract of land; and at the sheriff's sale under these levies, in 1841, the said Branch Bank became the purchaser, at the amount of its judgment, and received the sheriff's deed. "After the sale of said land under said judgments," as the bill alleged, "and the purchase of the same by the said bank, the said bank did not take possession of said land, but the said Isaac Clark, who was in possession of said lands at the time of said sale, continued in the possession thereof; the wife and children of the said Isaac Clark remained upon and in possession of said land, up to the time of the death of said Isaac, in the year 1860; and after the death of the said Isaac, in 1860, his widow, Jemima Clark, and a portion of complainants, continued upon and in possession of said lands, up to the time of the death of the said widow Jemima, in the year 1872; and after the death of the said widow Jemima, some of said complainants have continued to reside upon, and remain in the possession of said land, up to the present time, under claim of title thereto through their ancestor, Isaac Clark."

In 1844, the Branch Bank at Decatur brought an action at law against said Isaac Clark and William C. Clark, to recover the possession of said lands, as well as to try the title thereto; and while the suit was pending, James M. Gullatt, who "was then in the occupancy of a part of said lands, and claimed an interest therein in right of his wife, the said Jerusha, who was then dead," was joined as a defendant. The bill alleged that said William C. Clark was made a defendant to said suit, on account of his supposed or asserted interest under the deed from his father, above mentioned, for a portion of the

lands; and that the interest asserted by Gullatt, on account of which he was made a defendant, was under the said fraudulent deed to his wife Jerusha. At the March term, 1847, a judgment was rendered in said cause, in favor of the plaintiff, as on the verdict of a jury; and the judgment entry, after setting out the verdict and judgment in the usual form, then incorporates an agreement entered into between the parties, as follows: "And the said plaintiff agrees that no writ of *hab. fac. poss.* shall issue against said defendants in this cause, before the 25th day of March, 1850; and it is further agreed that no writ of *hab. fac. poss.* shall ever issue thereafter in favor of said plaintiff, against said defendants, or either of them, if said defendants, or either of them, shall well and truly pay to said Branch Bank at Decatur, within three years next ensuing, the sum of seven hundred and seventeen dollars and seventeen cents, with lawful interest thereon from this date; and shall also pay, within said three years next ensuing, to William A. Austin ninety dollars and thirty-four cents, and to said William A. Austin, acting partner in the firm of Austin & Ambrister, one hundred and twenty-nine dollars and forty-three cents, and to Coffee & Bradford three hundred and nineteen dollars and sixty-four cents; all of said several sums to be paid, with lawful interest thereon respectively from this date. But, if the said several sums of money, or any part thereof, shall not be paid, with interest on the same respectively, on or before the 25th day of March, 1850, the said writ of *hab. fac. poss.* shall issue immediately thereafter, and the said plaintiff be put into possession of the said premises, pursuant to the verdict and judgment as above rendered; and should said defendants fail to pay either of the above described debts, the aforesaid judgment is to be enforced for the benefit of such unsatisfied debt, by the execution of such judgment for their satisfaction."

The bill alleged the making of this agreement between the parties to said suit, and its entry of record as a part of the judgment, a copy of which was made an exhibit to the bill, and then continued thus: "After the recovery of said lands by said Branch Bank, in March, 1847, the said Isaac Clark continued in the possession thereof, under the terms of said compromise, or contract with said bank, for about the period of one year; at which time, the said Isaac Clark and the said James M. Gullatt entered into an agreement, in substance, and by the terms of which, he, the said Gullatt, was to cultivate and manage that portion ef said lands which the said Isaac had previously conveyed to the said Jerusha, and apply the rents, or the value of the rents thereof, in satisfaction or payment of the debts described in said final judgment and

compromise; and the said Isaac then removed about ten miles distant from his residence on said lands, and established a shop for carrying on the business of a blacksmith and gunsmith, which he carried on for several years next thereafter; but the said Isaac never at any time abandoned the possession of said lands, nor removed his family therefrom—on the contrary, although the said Isaac remained away from said lands, for the most of the time, after said compromise with the bank and said contract with said Gullatt; yet the said Isaac left his family, consisting of a wife and several children, some of whom were then grown and of full age, in the actual occupancy and possession of said lands, under and by virtue of his title to the same. The wife of the said Isaac, and some of his children, continued to reside upon and cultivate said lands, or a portion thereof, from the time of said compromise with the bank, up to the death of the wife in 1872; and after her death, some of the children and heirs at law of the said Isaac continued all the time, up to the present, in the actual possession of said lands, under claim of title thereto, through their father, the said Isaac, who died in the year 1860. The said James M. Gullatt, under said agreement with the said Isaac, occupied and cultivated that portion of said lands so *deeded* to the said Jerusha by the said Isaac, from the time said agreement was entered into, up to the year 1860. In the year 1849, before the expiration of said three years allowed for paying said bank debt, under said compromise, or contract with the bank, the said Isaac Clark and James M. Gullatt paid off and satisfied to said bank the full amount of said bank debt, with the interest thereon; but none of said other debts, described in said compromise or contract, have ever been paid"; and the bank did not then convey the land to said Clark and Gullatt, or either of them, because of these unsatisfied debts, for whose benefit the judgment was, by the terms of the compromise, to be kept open and unsatisfied.

On the 1st January, 1857, as the bill further alleged, said James M. Gullatt, "being then in possession of a portion of said lands, cultivating the same under said contract with said bank, and under said agreement with said Isaac Clark, to cultivate the same, and apply the rents thereof to the payment of said debts," and being indebted in a large amount to said John Snodgrass, one of the defendants to the bill, executed a deed of trust to Thomas Snodgrass, as trustee, "whereby he conveyed a considerable amount of personal property, and all of said lands hereinbefore described, to secure the said John Snodgrass in the payment of said sum of $5,000, with interest thereon. By the terms of said deed of trust, said Gullatt continued in the possession of that por-

tion of said lands *deeded* by the said Isaac Clark to the said
Jerusha, and by her re-conveyed back to the said Isaac Clark
in 1839, until after the maturity of said deed of trust.   When
the said Gullatt made default in the payment of the debt
intended to be secured by the said deed of trust, Thomas
Snodgrass, the trustee in said deed, sold said lands on the
1st day of March, 1860, pursuant to the terms of said trust;
at which said sale, said John Snodgrass became the pur-
chaser, for $2,000; but said Thomas Snodgrass, as trustee,
did not execute a deed to said John Snodgrass, for the said
lands, until the 27th day of November, 1865, more than five
years after the said sale.   Since the execution of said deed to
said Snodgrass, he has all the while, up to the present time,
been in possession of a portion of said lands, claiming title
thereto by virtue of and through said deed of trust, and said
trustee's sale and conveyance.   But complainants aver, that,
at the time said Gullatt executed said deed of trust, he had
no title, either legal or equitable, in or to said lands, nor any
interest therein, save his possession and right of possession
to a portion thereof, for the purpose of cultivation, under said
contract with said Isaac Clark; that the said Isaac Clark,
who was then living, but very old and infirm, had no knowl-
edge that said Gullatt had executed, or contemplated exe-
cuting a deed of trust, or any other kind of deed to said land,
to said Snodgrass or any other person, and said Isaac died
before said land was sold under said deed of trust.   And
complainants further aver that, at the time said deed of trust
was executed, said John Snodgrass knew that said Gullatt
had no title to the said land, or any portion thereof, and had
actual knowledge at the time, and long before said deed of
trust was executed, of all the terms and conditions of said
compromise, or contract between said Branch Bank, of the
one part, and said Isaac Clark, William C. Clark and James
M. Gullatt, of the other part, in regard to said lands."

"On the 1st day of July, 1859," as the bill further alleged,
"two years after the execution of said deed of trust, and ten
years after the payment of said bank debt by the said Isaac
Clark and James M. Gullatt, but before the sale of said lands
under said deed of trust, and after the affairs of said Branch
Bank at Decatur had passed into the hands and control of
John Whiting, a new commissioner and trustee, who had no
knowledge of said compromise and contract hereinabove set
out, in regard to said land, said Whiting was induced by the
representations of said Gullatt that all of said debts described
in said compromise had been paid by him, and that he was
entitled to have said lands re-conveyed to him in his own
name, to execute to said Gullatt, and did execute to him,

alone and individually, on the 21st July, 1859, a deed re-conveying all of said lands to said Gullatt, reciting, as the consideration therefor, the sum of $717, which had been paid to said bank in 1849. And complainants aver that said deed was secretly obtained and procured by said Gullatt, without the knowledge or consent of said Isaac Clark, or of said William C. Clark; and that said Isaac died shortly after the same was so obtained, and never knew that such an instrument existed; and said deed, though obtained in 1859, was not recorded until the latter part of the year 1865, long after said land had been sold under said deed of trust, and purchased by said John Snodgrass. And complainants further aver, that they never knew of the existence of said deed from the bank to said Gullatt, until about the year 1872, after they had commenced suit in this court against said Gullatt and said Snodgrass for the recovery of said lands, which suit was commenced on the 3d November, 1871, and progressed in this court until its June term, 1876, when the same was dismissed by the court, but without the complainants' consent, and contrary to their desire." "And complainants allege, that the act of said Gullatt, in procuring said deed to be executed to him in his individual name by said John Whiting, commissioner and trustee as aforesaid, was in fact a fraud as against the said Isaac Clark in his life-time, and as against complainants, his heirs at law, since his death; and that said bank debt had been fully paid off by said Isaac Clark, William C. Clark, and James M. Gullatt, more than ten years before the execution of said deed by said Whiting; and that said John Snodgrass was personally present in said Circuit Court, when said judgment for the recovery of said lands was rendered in said suit, and had personal knowledge at the time said judgment was so rendered, and said compromise entered into by and between the said parties to said suit, of all the terms, conditions and stipulations in said judgment and compromise contained, in regard to said lands"; "and the fact that said deed was so obtained by said Gullatt was kept secret by him and the said Snodgrass for several years after the same was so obtained, and until long after the sale of said lands under said deed of trust, and the same was not recorded until in the latter part of 1865."

The prayer of the bill was, "that said John Snodgrass may be declared to be a trustee of the legal title to said lands for the complainants, and be compelled by the decree of this court to convey to them, without warranty, all the right, title, claim and interest in said lands, which he acquired under and through his said purchase at said trustee's sale, under said deed of trust"; that an account be taken of the rents and

profits of the land during the possession of said Snodgrass and Gullatt respectively, and also of all moneys paid by said Gullatt to said Branch Bank, or on account of the debts described in the said judgment and compromise; " that if, on the stating of said accounts, it should appear that said Gullatt has paid out on account of said debts a sum greater than the value of said rents of that portion of said lands in his possession since the year 1847, up to the year 1860, then complainants hereby offer to give said Snodgrass the advantage of any such excess, by crediting the same to him on his account for the rent of the said lands since he has been in the possession thereof, or by the said Snodgrass retaining a lien on said lands for such balance in favor of said Gullatt, if any there should be ; and complainants offer to allow to said Snodgrass, or to pay to him, any moneys that he may have paid out in the way of taxes, or improvements put upon said lands, either by him or said Gullatt, before the commencement of this suit ; and complainants will abide any decree or decision of this court in regard to said taxes and improvements ; and for such other and further relief as the nature of complainants' case may require."

Gullatt, with other defenses, pleaded his discharge in bankruptcy ; which plea was sustained by the chancellor, and the bill dismissed as to him. Snodgrass filed a demurrer to the bill, assigning eleven causes of demurrer; of which the court sustained the following : " 3. Because there is a want of certainty in the allegations of the bill, as to what portions of the land which they seek to recover are and have been in the possession of this defendant, and what portions are and have been in the possession of said complainants under color or claim of title. 4. Because the allegations of said bill do not show with sufficient certainty what portions of said land the said Isaac Clark was in possession of, at the time of his death, under claim of title. 5. Because the allegations of said bill do not show with sufficient certainty what portions of the lands claimed were in the possession of this defendant, between the time of his alleged purchase under said deed of trust, on the 3d March, 1860, and the commencement of this suit. 6. Because the bill does not show which of the complainants, mentioned as having been in possession, have been in the possession of said lands since the death of said Isaac Clark, and what portions thereof, and during what time each held possession adversely to this defendant. 7. Because said complainants, by their said bill, are claiming said lands as heirs at law of Isaac Clark, basing the claim of their said ancestor thereunto upon an agreement with said Branch Bank which, according to said allegations, was void under section

1862 of the Revised Code of Alabama. 8. Because complainants claim said lands under an agreement set forth in their bill, between said Isaac Clark, their ancestor, James M. Gullatt and William C. Clark, with said Branch Bank at Decatur, the terms of which are set forth in said bill, and show that said Isaac Clark, William C. Clark and James M. Gullatt never complied on their part with a part of the conditions of said agreement; and complainants do not, by their said bill, offer to comply therewith. 9. Because complainants do not show by their said bill what part of the consideration alleged in said bill to have been paid to said Branch Bank at Decatur, for said lands, was paid by said Isaac Clark, and what part by William C. Clark, and what part by said James M. Gullatt; nor does it pray any discovery from any of the defendants, in relation thereto. 10. Because complainants show, by the allegations of their said bill, that said Isaac Clark, their ancestor, under whom they claim said lands, was in his life-time divested of all right, title and interest, legal or equitable, in said lands, which he had prior to July, 1841, and fail to show any subsequent conveyance to him, or that he ever paid any specific sum of money therefor, or other thing of value, under the parol agreement set forth in said bill." Adverse possession for more than ten years, and lapse of time, were specially assigned as causes of demurrer, but were overruled; and they were also set up by way of plea, together with the statute of frauds.

On sustaining the demurrer, to the extent above stated, the chancellor granted leave to amend the bill; but, when the amendment was presented, and leave asked to file it, he held that it was "demurrable for several causes"; and further, "it appearing from the allegations of complainants' bill, original and amended, that they can not recover in this suit, because of the statute of limitations and statute of frauds," he dismissed the bill.

The decree on the demurrer, and the decree dismissing the bill, are now assigned as error.

L. C. COULSON, for appellants.

CABANISS & WARD, contra.

STONE, J.—When the Branch Bank at Decatur recovered the lands in controversy in the ejectment suit, the result was a judicial ascertainment that the lands were the property of the bank. We do not understand that the complainants controvert this, or seek to re-try the questions settled in that suit. The verdict and judgment in that suit had pronounced the

[Clark v. Snodgrass.]

several deeds made by Isaac Clark, father of complainants, to be fraudulent, and thus swept them from the field of contestation, so long as that judgment was acquiesced in.   There was an agreement of record, when that judgment was rendered, part and parcel of the judgment entry, that if the defendants, or either of them, should pay the amount of the judgment to the bank, and pay three other named judgments, and the interest thereon, then no writ of possession should ever issue on said judgment.   The defendants to that suit and judgment were Isaac Clark, William Clark, and James Gullatt; William being son, and James Gullatt son-in-law, of Isaac Clark.   The agreement does not disclose, and it is nowhere shown, in what manner the lands were to be held and owned, if redeemed within the three years.   The judgment was rendered, containing the foregoing agreement, in 1847, and the three years expired in 1850.   The bank never enforced its judgment, and never sued out a writ of possession.   In 1859, John Whiting, at that time commissioner to wind up the banks, conveyed the lands, by deed of quit-claim, to James Gullatt, who had all the while been in possession of the lands, or a part of them.   In 1857, before obtaining any title, Gullatt conveyed the lands to Thomas Snodgrass, trustee, to secure the payment of a debt he owed to John Snodgrass, with power of sale in case of default.   In 1860, Thomas Snodgrass, the trustee, advertised and sold the lands under the power, and John Snodgrass, the beneficiary, became the purchaser.   In 1865, a deed was made by the trustee, Thomas, to John, the purchaser.   The bill in this case was filed September 26th, 1876, and seeks to have a trust declared in the lands, for the benefit of the complainants, heirs of Isaac Clark, who died about 1860, or 1861.   Snodgrass, Gullatt and others, are made defendants.

If there had been no conveyance of these lands from the bank commissioner to Gullatt, nor from him to Snodgrass, the form of remedy to obtain relief would have been a bill for specific performance.   To maintain such a bill, the complainants must have a clear and common right to the relief prayed, and it must be distinctly and clearly charged in the bill.—1 Brick. Dig. 692, §§ 768-9; *McDonald v. Ins. Co.*, 56 Ala. 468; *Schaffer v. Lavretta*, 57 Ala. 14.   If the averments be such, or so vague, as to leave the court in doubt, whether the complainants are entitled to any, and what relief; or, if it be left in uncertainty, whether the complainants are entitled to common relief, then such bill must be pronounced insufficient.   Such are the rules, when the bill seeks specific performance, and is not complicated with other transactions. But the case made by the present bill is complicated with

(16)

other transactions. It seeks to charge, first, Gullatt, and then Snodgrass, as a trustee of the title for the benefit of the heirs of said Isaac Clark, and then to have specific performance, by having the title decreed to the heirs of Isaac Clark. If this relief were granted as prayed for, the said heirs would become tenants in common, and equal owners.

The original bill is defective and insufficient in many particulars. It contains these several averments: "That after said sale of said lands under said judgments, and the purchase of the same by said bank, the said bank did not take possession of said land, but the said Isaac Clark, who was in possession of said lands at the time of said sale, continued in the possession thereof; the wife and children of the said Isaac Clark remaining upon and in possession of said land, up to the time of the death of said Isaac in the year 1860 ; and after the death of the said Isaac in 1860, his widow, Jemima Clark, and a portion of complainants, continued upon and in possession of said lands, up to the time of the death of said Jemima in the year 1872 ; and after the death of the said widow Jemima, some of said complainants have continued to reside upon, and remain in the possession of said land, up to the present time, under claim of title thereto, through their ancestor, Isaac Clark. * * * That after the recovery of said lands by said Branch Bank, in March, 1847, the said Isaac Clark continued in the possession thereof, under the terms of said compromise or contract with said bank, for about the period of one year, at which time the said Isaac Clark and the said James M. Gullett entered into an agreement, in substance, and by the terms of which, he, the said Gullatt, was to cultivate and manage that portion of said lands which the said Isaac had previously conveyed to the said Jerusha " [wife of said Gullatt], " and to apply the rents, or the value of the rents thereof, in satisfaction or payment of the said debts described in said judgment and compromise. * * The wife of the said Isaac and some of his children continued to reside upon and cultivate said lands, or a portion thereof, from the time of said compromise with the bank up to the death of the wife in the year 1872 ; and after her death, some of the children and heirs at law of the said Isaac have continued all the time, up to the present, in the actual possession of said lands, under claim of title thereto, through their father, the said Isaac, who died in the year 1860. The said James M. Gullatt, under said agreement with the said Isaac, occupied and cultivated that portion of said lands so deeded to the said Jerusha by the said Isaac, from the time said agreement was so entered into, up to the year 1860. In the year 1849, and before the expiration of the three years

[Clark v. Snodgrass.]

allowed for paying said bank debt, under said compromise or contract with the bank, the said Isaac Clark and James M. Gullatt paid off and satisfied to said bank the full amount of said bank debt, with the interest thereon; but none of the other debts described in said contract or compromise with said bank, were paid, or ever have been paid, or otherwise discharged, either by the said Isaac Clark, William C. Clark, or James M. Gullatt, or by any other person for them. * * * Since the execution of said deed to John Snodgrass" [by Thomas Snodgrass, trustee, on the 27th November, 1865], " he has been all the time, up to the present time, in possession of a portion of said lands, claiming title thereto by virtue of and through said trust deed, and the trustee's sale and conveyance of said lands, under said deed of trust."

After John Snodgrass took possession under his purchase at trustee's sale, he must certainly be regarded as holding in his own right, and independently of the complainants in this suit. This constituted his possession adverse; and such possession, according to the averments of the bill, continuing uninterruptedly for more than ten years when the present suit was commenced, he acquired a perfect right to hold the lands so in his adverse possession; and on such right thus acquired, even if it had its origin in tort, he could either maintain or defeat an action of ejectment.—*Tayloe v. Dugger*, at last term; *Smith v. Roberts*, 62 Ala. 83; *Molton v. Henderson*, *Ib.* 426; *Cleveland v. Williamson*, 57 Ala. 402. And this defense avails in equity, as at law, and may be raised by demurrer.—*Coyle v. Wilkins*, 57 Ala. 108; *Molton v. Henderson, supra*; *Bercy v. Lavretta*, 63 Ala. 374.

The patent defects in the original bill are—*first*, that it fails to aver the payment of the described debts, other than the debt to the Branch Bank; but, *ex industria*, avers they are not paid. Such payment, by the terms of the agreement of compromise, was made a condition precedent to the surrender of the lands by the bank. *Second*, it fails to aver of what lands Snodgrass had held possession since the deed was made to him, and in so failing, leaves entirely uncertain what lands the widow and heirs of Isaac Clark had been in possession of. *Third*, the bill contains an unmistakable implication that Gullatt, by paying the debts, or large part of them, was entitled to some equity in the lands. Whatever that equity was, Snodgrass became the owner of, by the deed of trust, and sale and purchase under it. The bill not only fails to do equity, but it is fatally wanting in averments to enable the court to understand the rights of these parties. *Fourth*, the bill is fatally deficient in want of certainty of averment; notably, of the possession of the widow, and *some of the children*,

after 1860, when Snodgrass purchased. Other very loose averments might be pointed out, but we deem these sufficient.

The amended bill, offered and rejected, attempted to heal some of these imperfections. Others it ignored, while it placed in more prominent light Gullatt's equity, transferred to Snodgrass, and still makes no offer to do equity.

There are many reasons why the claim of homestead was worthless. Among them, the repeal of the law which conferred it, before the claim was asserted.

Affirmed.