[Bernstein v. Humes.]

# Bernstein *v.* Humes.

| 75   241 |
| 116   626 |

*Statutory Real Action in the Nature of Ejectment.*

1. *Admissibility in evidence of ancient documents.*—Under the facts of this case, a statutory real action in the nature of ejectment, it was held that the ruling of the primary court, in allowing the plaintiff, in support of his title, to read in evidence a duly certified transcript from the receiver's journal, a book belonging to the United States land office, showing that a party under whom the plaintiff claimed, had purchased the land in controversy in 1809, was free from error.

2. *Same.*—Nor did the primary court err in allowing the plaintiff to read in evidence transcripts of the records of deeds in the office of the judge of probate, executed in 1818 and 1833, under which the plaintiff claimed, although the deeds may not have been properly acknowledged, and not recorded within the time prescribed by the statute.

3. *Adverse possession of land; what necessary to avoid deed executed by party out of possession.*—To avoid a deed to land executed by a party out of possession, on account of the adverse possession of a third party, it is not required that the possession of the latter should have been under a *bona fide* claim of right to the premises, or under the honest belief that his title was good; it is sufficient if he claimed in independent right, adversely.

APPEAL from Madison Circuit Court.

Tried before Hon. H. C. SPEAKE.

This was a statutory real action in the nature of ejectment, brought by Mrs. E. C. Humes and others against Morris Bernstein; was commenced on 12th July, 1871, and was tried on issues joined on the pleas of not guilty and the statute of limitations, the trial resulting in a verdict and judgment for the plaintiffs. The defendants also suggested of record adverse possession for three years next before the commencement of the suit, and the erection by them of permanent improvements.

The controversy was mainly over a part of lot numbered 17 in the city of Huntsville, fronting on Gallatin street thirty-nine feet, the measurement commencing ninety-nine feet from the north-west corner of said lot, and running in a southerly direction. The lot is situated in a square which is bounded on each of its sides by a street, Gallatin street binding it on the west. This square was originally divided into four lots of equal dimensions; and lot numbered 17 was the north-west quarter of the square; and of that lot the defendant owned the north-west corner, having acquired it by purchase and conveyance from one Chappell, on 21st December, 1861, who, on

16

[Bernstein v. Humes.]

the day before, had acquired it from Battle and others, who, in turn, claimed under a deed executed by a Mrs. Hill, in 1858. The plaintiffs owned the greater part, if not all the balance of said square, their land adjoining that of the defendant on the east and south. They claimed the land sued for "as a part of the old Bell tavern lot," and they trace their title, by documentary proof, from the government; the descriptions, however, in their later deeds being of so general a character as to require proof *aliunde*, to identify the premises conveyed. The evidence introduced on behalf of the defendant tended to show that he took possession of the premises sued for soon after his purchase from Chappell, and that he was in possession thereof in May, 1871, when L. P. Walker conveyed it, with other property, to the plaintiffs. The character of this possession, however,—whether adverse to the plaintiffs or otherwise—was one of the disputed questions of fact in the lower court, and was submitted to the jury on the evidence. The conveyance by Walker to the plaintiffs is referred to in the opinion as the deed from Walker to Chapman. For a full statement of the chains of title relied on by the respective parties, see the reports of this case on the last two appeals.—*Bernstein v. Humes*, 71 Ala. 260; *Humes v. Bernstein*, 72 Ala. 546.

As recited in the bill of exceptions, "the plaintiffs, for the purpose of showing that a patent for the south-west quarter of section thirty-six, in township three, range one, west, in Madison county, Alabama, embracing the lot of land in controversy, had been issued by the Government of the United States to Leroy Pope in the year 1809, introduced John M. Cross as a witness, who testified that he was the register of the United States land office in Huntsville, Alabama; that he found in his office patents for other lands in the same township, dated in 1809, but none for said quarter section, and thåt patents issued by the United States were recorded in Washington City. In connection with the testimony of said Cross, the plaintiffs offered in evidence a duly certified transcript from the receiver's journal, a book belonging to said land office, of August 25th, 1809, in words and figures as follows:

' RECEIVER'S OFFICE AT NASHVILLE, }
August 25th, 1809.   {

Sundries, Dr. To sales of public land, forward......$2998.62. Leroy Pope, of Petersburg, Georgia, for three thousand seven hundred and sixty-three dollars, twenty-nine cents, being the amount of the purchase-money of south-west quarter of section thirty-six, in township 3, of range 1, west, containing 160 14-100 acres at $23.50. Purchased on the 25th of August, 1809, as appears by the register's return...................$3763.29.'

The defendant objected to this transcript as evidence, on the ground that a transcript of the record of the patent was better evidence. The court overruled the objection, and allowed the transcript to be read to the jury, and the defendant excepted." As a part of their chain of title, the plaintiffs offered in evidence a transcript of the record of a deed purporting to have been executed by David Cannon and his wife on 28th December, 1818, in the presence of two witnesses, and to convey the land in controversy, with other land, to Hugh and Daniel Price. This deed, by the certificates thereon, also purports to have been filed for record on 23rd November, 1822, to have been acknowledged by David Cannon on 13th March, 1823, and to have been recorded five days thereafter. The certificate of acknowledgment purports to have been made by the clerk of the county court of Madison county, and states, in substance, that David Cannon, whose name is subscribed to the deed, personally appeared before said clerk, and acknowledged " the signing, sealing and delivery of the same " to the grantees, " for the purposes therein named on the day of its date." To the transcript thus offered the defendant objected, because " it was not shown that the deed had been acknowledged or proved according to law, and because it showed that the deed had not been recorded within twelve months from its date." The court overruled the objection, allowed the transcript to be read to the jury, and the defendant excepted. The plaintiffs also offered a transcript of the record of another deed in his chain of title, purporting to have been executed in 1833. To this transcript the defendant objected on the ground that it did not show that the deed had been recorded within twelve months from its date; but the court overruled the objection, and the defendant excepted.

Charge 17, given by the court at the request of the plaintiffs, and referred to in the opinion, is in these words : " If the jury believe from the evidence, that Bernstein, at the time Walker conveyed the property in dispute to the plaintiffs, was in possession of the same by himself or tenant, but was not in such possession adversely, claiming *bona fide* to have the right thereto, then the court instructs the jury that plaintiffs have shown such a complete chain of title by the deeds introduced, as will support a recovery, and that upon such title, if the jury believe such evidence, the plaintiffs are entitled to recover." To the giving of this charge the defendant excepted.

The rulings above noted, together with numerous others not necessary to be here set out, are assigned as error.

BRANDON & JONES and CABANISS & WARD, for appellant.

[Bernstein v. Humes.]

L. P. WALKER and HUMES, GORDON & SHEFFEY, *contra*.

STONE, J.—We are not inclined to enter into the inquiry, when ancient documents may be read in evidence, without proof of their execution. Nor will we discuss that other question, when certified copies may be used without accounting for the originals, the contest arising between parties who are presumed not to have the custody of the originals. There is testimony in the record tending to show that, at some time before Bernstein acquired his title, the lot in controversy, or a part of it, was used and occupied as part of the Bell tavern property. Possibly the stable, partly brick and partly framed, covered a part of the lot sued for. Proof by some of the witnesses tends to show that Mrs. Hill, a former owner of the lot to which Bernstein has a deed, at some time occupied a part of the premises sued for, as a cow lot. The dust of years has settled on the transactions brought to view in the testimony, and human memory is not infallible. Some of the witnesses must be mistaken, for they are in conflict. Be the true facts as they may, we hold that the rulings of the circuit court, in receiving the ancient deeds and copies of them in evidence, are free from error.— *White v. Hutchings*, 40 Ala. 253; 1 Greenl. Ev. § 145, and notes; *Sharpe v. Orme*, 61 Ala. 263; *Baker v. Prewitt*, 64 Ala. 551; *Beall v. Dearing*, 7 Ala. 124.

This is the fourth appeal in this cause: *Bernstein v. Humes*, 60 Ala. 582; s. c. 71 Ala. 260; *Humes v. Bernstein*, 72 Ala. 546. We had hoped we had declared the principles so clearly that the case would not return upon us. Among other things, we have said, in substance, that if the lot in controversy is south of the seven feet alley—in other words, more than ninety-nine feet south of the north-west corner of lot seventeen,—then Bernstein has shown no documentary title to it. We further said if Bernstein took or held possession with no intention of claiming the property if not embraced in his deed, and if in fact his deed does not embrace it, then his possession was not adverse, so as to ripen into a title by ten years of such occupancy, nor would it avoid a conveyance by the rightful owner, not in possession. We said further, that if he and those under whom he claimed, had been in continuous adverse possession, claiming to hold as of right for fourteen years, eight months and ten days, then such adverse holding perfected a title in him, although he knew he had no title in the beginning. The question, in this aspect of the case, is whether he claimed, right or wrong—that is, whether he had title or not,—or whether he claimed only in the event he had title. And the same rule applies to the other phase of the question. If he was in adverse possession, claiming the right to hold the property whether

[Fulgham v. Morris.]

his title embraced it or not, then Walker's deed to Chapman, made while Bernstein was so in adverse possession, was invalid, and conveyed no title which will maintain a suit. On the other hand, if Bernstein was in possession, claiming the lot only in the event it was covered by his deed, then if his deed does not embrace it, such possession, no matter what acts of ownership he may have done and performed, will not invalidate the deed of Walker to Chapman; and this line of the defense must fall. *Smith v. Roberts*, 62 Ala. 83; *Clark v. Snodgrass*, 66 Ala. 233; *Alexander v. Wheeler*, 69 Ala. 332. The circuit court erred in the seventeenth special charge given at the instance of plaintiffs. It required that, to avoid Walker's deed to Chapman, Bernstein's possession should have been under a *bona fide* claim of right to the premises. This was equivalent to requiring that Bernstein should have had the honest belief that his title was good. It was enough that he claimed in independent right, adversely.

Reversed and remanded.

BRICKELL, C. J., not sitting.