# Bernstein *v.* Humes.

*Statutory Action in nature of Ejectment.*

78  134
99  536

1. *Proof of ancient deeds and record copies.*—On the last appeal in this case (75 Ala. 241-5), the admissibility of the documentary evidence constituting plaintiffs' chain of title, which consisted of certified copies of deeds recorded fifty years ago, was considered by this court, and the evidence was held to have been properly received; and the court reaffirms that decision.

2. *Sufficiency of conveyance in description of land.*—"Part of lot No. 17 in the original plan of said town [Huntsville], fronting on Gallatin street fifty feet, extending eastwardly seventy-three feet, known as the property formerly owned by Isaac Jamison," when the words are used in a deed as describing the property conveyed, are not descriptive of an undefined, partial interest in the said Jamison lot, but convey the entire lot, or such interest therein as the grantor owned and possessed, the specified front and depth having reference to the dimensions of that lot, and not of the larger lot (No. 17) of which it formed a part.

3. *Charge referring legal question to jury; when error without injury.* A charge which submits to the jury the decision of a legal question, which the court ought to have decided against the party excepting, is error without injury.

[Bernstein v. Humes.]

4. *General exception to charge; when sufficient.*—When a charge given consists of but a single sentence, containing several clauses connected and dependent throughout, a general exception to the entire charge is sufficiently specific and definite to reach error in any part of it.

5. *Adverse possession; what constitutes.*—The possession of a mere trespasser, entering and holding without claim of right, is not adverse to the rightful owner, and does not ripen into a title by lapse of time, nor invalidate a conveyance by the owner to another person.

6. *Forfeiture of title by want of possession.*—The mere fact that the owner of real estate "has not had possession of it, claiming title to it," for more than twenty years, in the absence of any adversary claim or possession, does not work a forfeiture of his title.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. HENRY C. SPEAKE.

This action was brought by Mrs. E. C. Humes and others, children of Reuben Chapman, against Morris Bernstein; and was commenced on the 12th July, 1871. The premises sued for, besides a narrow strip two feet wide by ninety-nine feet in depth (which involved only a question of disputed boundary), were described in the complaint as "part of lot number seventeen in the original plan of said city (Huntsville), fronting on Gallatin street, commencing on said street ninety-nine feet from the north-west corner of said lot number seventeen, and running thence southwardly, along said street, thirty-eight and one half feet; thence eastwardly, at right angles with said street, one hundred and sixteen and one half feet; thence north-westwardly, on a line parallel with said street, thirty-eight and one half feet; thence westwardly, at right angles with said street, to the beginning." The premises sued for were situated in a square, which was bounded north by Clinton street, east by Jefferson, south by Randolph, and west by Gallatin street; and this square was subdivided, according to the original map of the town, into four lots, numbered, 17, 18, 25, and 26, respectively; each let measuring one hundred and forty-seven feet six inches in width, and the same in length. Lot No. 17 was the northwest quarter of the square, and the defendant owned the north-west corner of that lot; while the plaintiffs owned all, or nearly all of the remaining portion of the square, their lands adjoining the defendant's on the east and south. The plaintiffs claimed the premises as a part of the property which once belonged to the old " Bell Tavern," and afterwards to the " Huntsville Hotel Company;" and they deduced their title from the said company, under a deed from the United States marshal to L. P. Walker, as the purchaser at a sale under execution against the company, and a subsequent conveyance from Walker to themselves. The sale by the United States marshal was made on the 7th February, 1870, and the lands sold were described in his deed to Walker as lots Nos. 17, 18, 25, and 26 ;

[Bernstein v. Humes.]

and Walker's deed to the plaintiffs, which was dated May 22d, 1871, described the premises conveyed by the same words.

The defendant claimed the premises of which he was possessed under a conveyance to him by Chappell and wife, which was dated the 21st December, 1861, and in which the premises conveyed were thus described: "All those certain lots of lands lying in the town of Huntsville, in said county, known and described as follows, being parts of lot No. 17 in the plan of said town: commencing at the north-west corner of a little brick house on Gallatin street, running thence eastwardly, at right angles with said street, and parallel with Clinton street, seventy-four and a half feet, to a stake; thence, at right angles, to Clinton street; thence west to the north-west corner of said lot; thence south, along Gallatin street, to the beginning, being about sixty-seven feet, containing not quite one-eighth of an acre. Also, another lot of land in said town, being part of said lot No. 17, lying east of the above described lot, known as the lot on which John G. Bingham once lived; once owned by Isaac Jamison, sold as his property by J. F. Mills as sheriff to B. Patterson, by Patterson to D. B. Turner, and by said Turner to Lucy G. Hill; bounded on the east and south by the Bell Tavern lot. Also, another lot of land lying in said town, being part of said lot No. 17, bounded on the north by the first above lot, on the east by the lot last above described, on the south by the Bell Tavern lot, and on the west by Gallatin street, supposed to front on said street about twenty-five feet, and to run back east about seventy-four feet." The defendant pleaded not guilty, the statute of limitations of ten years, and adverse possession for more than three years, with a suggestion of the erection of permanent improvements; and the cause was tried on issue joined on these pleas.

The plaintiffs' chain of documentary title, back to Leroy Pope, who held under a patent from the United States issued in 1809, is stated at length in the former reports of the case, particularly in 1 Ala. 260, and 72 Ala. 546; and a repetition of it is not necessary to an understanding of the legal principles decided on the present appeal. Among these deeds was a conveyance by Henry Cannon to Hugh and Daniel Price, which was dated December 28, 1818, and attested by two witnesses; but it was not filed for record until the 23d November, 1822, and it was recorded on the 18th March, 1823, on the acknowledgment of the grantor before the clerk of the County Court, taken on the latter day. The defendant objected to the admission of a certified copy of this deed as evidence, "because it was not proved or acknowledged according to law, and because said deed was not recorded within twelve months from its date;" and he duly excepted to the overruling of these ob-

jections. A certified copy of another deed, executed by John R. Elliott to A. J. Sadler, which was dated March 4th, 1833, and recorded on the 14th March, 1834, was offered in evidence by the plaintiffs, and was admitted by the court, against the defendant's objection, "because it was not recorded within twelve months from its date;" and to this ruling the defendant duly excepted.

The court charged the jury, in writing, as follows: "The plaintiffs, relying on documentary evidence, must show title in themselves, in one connected chain, from the Government down to themselves. The defendant admits the title properly established and proved, until the deed from Acklen (sheriff) to Elliott is reached; which deed, the defendant insists, is void for uncertainty. To make this deed certain, and to identify the land therein described, the law authorized the plaintiffs to introduce other deeds, to show that Jamison, at the time of the sale by Acklen as sheriff, only owned, fronting on Gallatin street, the fifty feet now sued for; and for this purpose plaintiffs offer in evidence the deeds from Jamison to Rison, and from Jamison to Bingham, both made prior to the date of Acklen's deed to Elliott; and if you find, from the inspection of the deeds, that Jamison, at the time of the sale by Acklen, only owned the fifty feet described in plaintiffs' deed, then you are authorized to infer that plaintiffs have title to said fifty feet fronting on Gallatin street, and extending back eastwardly seventy-three feet, — inches. The defendant further says, that there is a break in plaintiffs' title, in this: that the deed from Caldwell to Yeatman does not convey the said fifty feet, but only a part thereof, and does not describe the part conveyed. *Standing alone, this deed only purports to convey a part of the lot bought by Caldwell from Horton and Robinson, and described in their deed to said Caldwell as 'part of lot No. 17, fronting on Gallatin street fifty feet, and extending back in an easterly direction seventy-three feet, — inches.' It is for the jury to determine, from the other deeds offered in evidence and the parol evidence, whether Caldwell intended to convey the whole, or a part of said lot; and if a part, what part, of this fifty feet fronting on Gallatin street, was sold by Caldwell to Yeatman.*" To the italicized portion of this charge the defendant excepted.

The court further instructed the jury as follows: "The plaintiffs introduced, also, a deed from Wood to Kinkle, which does embrace the lot seventeen (17), fifty feet fronting on Gallatin street, and running back in an easterly direction seventy-three feet, — inches, and also embraces the forty feet extending still east of said lot; and if you find that Kinkle went into possession of said lot so conveyed, and he and others, claiming

[Bernstein v. Humes.]

under him, remained in possession for more than ten years, then plaintiffs have made out a case entitling them to recover, unless the defendant makes good some one of the defenses set up by him." To this part of the charge, also, the defendant excepted.

The court charged the jury, also, on the request of the plaintiffs, as follows: "The acts of a mere trespasser, or adventurer, without claim of right, do not constitute his possession adverse; and such possession will neither ripen into a title by lapse of time, nor defeat the operation of a conveyance by the rightful owner. And if the jury believe, from the evidence, that Bernstein took possession of the property in dispute without claim of right, then his possession was not, and could not become adverse, and they would be authorized to find for the plaintiffs." To this charge the defendant duly excepted.

The defendant asked the following charges in writing, and duly excepted to the refusal of each:

1. "If the jury find, from the evidence, that for more than twenty years before the commencement of this suit, neither the plaintiffs, nor any of the persons under whom they claim, had possession of the lot in controversy, claiming title to it; that the only possession any of such persons had of it, was a mere temporary use or occupation, such as held by other persons without objection from any of the persons under whom the plaintiffs claim,—then the plaintiffs can not recover."

2. "That part of the lot which is more than seventy-three feet from Gallatin street, is not embraced in any deed under or through which plaintiffs trace their title, except the deed from the marshal to Walker, and the deed from Walker to them, and can not be recovered in this suit.

3. "The deed from Caldwell to Yeatman conveyed only a part of the Jamison lot of fifty feet front on Gallatin street; that portion has not been located on the lot in controversy, and no recovery can be had in this suit under that deed."

4. "If Caldwell's deed conveyed only a part of the lot, after conveyances by persons claiming through or under it could not convey the whole, though purporting to do so."

The rulings of the court on the evidence to which exceptions were reserved, the charges given, and the refusal of the several charges asked, are now assigned as error.

Jno. D. Brandon, and Cabaniss & Ward, for appellant.

Humes, Gordon & Sheffey, contra.

STONE, C. J.—When this case was last before us, 75 Ala. 241, we considered the admissibility of the documentary evi-

[Bernstein v. Humes.]

dence, constituting the chain of paper title, and ruled that the Circuit Court did not err in its admission. We adhere to that opinion.

It is contended for appellant, that in the deed of Caldwell to Yeatman, bearing date February 22d, 1839, only an undefined, partial interest is conveyed, of what is known as the "Isaac Jamison lot." That lot is described in the Acklen (sheriff) deed, as "part of lot seventeen, fronting on Gallatin street fifty feet, extending eastwardly seventy-three feet, as the property of Isaac Jamison." This property passed through several intermediate conveyances, with substantially the same description, until the title was vested in Caldwell, by deed from Horton, bearing date August, 1838. The description in the deed from Caldwell to Yeatman is, "part of lot No. 17 in the original plan of said town, fronting Gallatin street fifty feet, extending eastwardly seventy-three feet, known as the property formerly owned by Isaac Jamison." We are at a loss to perceive on what principle this description is less comprehensive than that found in the other deeds. All bear evidence that they do not convey all of lot seventeen, but only a part of it. All convey a lot, part of lot seventeen, fronting on Gallatin street fifty feet, and running back seventy-three feet. The lot was sold, and first conveyed as the property of Isaac Jamison, and it is uniformly described as the "Isaac Jamison lot," or the lot formerly owned by Isaac Jamison. We hold the deed from Caldwell to Yeatman conveyed all the interest the former had acquired from Horton, or Horton and Robinson.

In the deed from Yeatman to Turner, trustee, bearing date February 23d, 1839, we find introduced other lots, which are conveyed to said Turner in connection with the "Bell Tavern property." The lots introduced are the following: "One, the lot purchased of Wm. McKay, Jr., by the said Phillips, on which is situated the new brick building; the other, the lot bought by said Phillips of D. B. Turner, in the rear of the same, on which is erected a frame stable." Turner conveyed to Wood the "Bell tavern property," and with it, and as part of it, the two lots last above described, and the part of lot 17 conveyed by Acklen, sheriff. It also conveyed another piece or parcel of lot, apparently in lot 18. The lot described as having the new brick house on it, is also apparently in lot 18. It is said in this deed that the property conveyed "embraces, and is intended to embrace, the establishment in the town of Huntsville known as the Bell Tavern." Now, the Bell Tavern was situated on a square, 295 feet on each side, bounded on all sides by streets: Clinton street on the north, Jefferson street on the east, Randolph street on the south, and Gallatin street on the west. This square was divided into four lots, each 147½

[Bernstein v. Humes.]

feet square. The N. E. corner is lot 18, the N. W. corner lot 17, the S. E. corner lot 26, and S. W. corner lot 25. Turner's deed to Wood conveys the entire lots 25 and 26, and in addition four other parcels, three of which are the Jamison lot, the lot with the new brick house on it, and the lot with the frame stable on it. These three parcels can not reasonably be supposed to be on either of the lots 25 and 26, for the latter were described and conveyed *in solido*, in a previous part of the deed. If accurately described, the lot with the frame stable on it is in the rear of the lot with the new brick house on it, sometimes described as part of the Bell Tavern. The deeds do not inform us on which lot or lots these two parcels, last above referred to, are situate, nor are their dimensions or boundaries given. The deeds from Wood down to the Huntsville Hotel Company pursue the descriptions given above, and keep up the designation, "the Bell Tavern property." At Walker's purchase, when the property was sold by the marshal, the entire four lots, 17, 18, 25 and 26, were sold and conveyed as the property of the Huntsville Hotel Company; and he conveyed the same quantity to the present plaintiffs. So, the plaintiffs show paper title to the property sued for, if that be the property conveyed by any of the various tributary deeds, which go to make up the Bell Tavern property, as described in Turner's deed to Wood.

The deeds, however, do not fix and define the land sued for as being the premises conveyed, without the aid of extrinsic proof; and it would seem that the proof, by which the Jamison lot is sought to be located, is entirely different from that which it is claimed identifies the small lot in its rear. First, as to the Jamison lot—fifty feet front on Gallatin street, running back seventy-three feet. The deeds describe this, as in lot 17. There is satisfactory, documentary proof that the northern sixty-seven feet of lot 17, extending from the north-west corner south, was sold and conveyed by Jamison before Sheriff Acklen made his sale; and the title to that property has come down by regular conveyance to Bernstein, the defendant. There is, next, a lot of twenty-five feet front on Gallatin street, to which Jamison never had any title or claim. On this lot the little brick house stood, and the deed to Jamison, which conveyed lot 17, excepted this twenty-five feet from its operation. Plaintiffs can assert no claim to either of these parcels. Next to the little brick house lot is the seven feet alley, mentioned in the conveyances. These several parcels cover about ninety-nine feet of the front of lot 17 on Gallatin street, and leave only forty-eight or forty-nine feet of the lot's front on Gallatin street. These facts being shown by documentary evidence, it is demonstrated, by a process of exclusion, that this is the property

which was sold and conveyed by Sheriff Acklen. This lot is particularly described and counted on in the complaint, and the defendant pleaded not guilty, and thus admitted himself in possession of the premises sued for. It is thus shown that, as to the lot, part of lot 17, fronting on Gallatin street, and running back seventy-three feet, the plaintiffs have shown a complete documentary title, and a right to recover, unless the defendant has made good some line of his defense.

The location of the rear part—some forty feet—of the lot sued for, is not defined nor ascertained by the documentary evidence. It requires extrinsic proof, oral or otherwise, to show that it comes within the descriptive clauses of some one of the deeds, in a chain of title which ultimately merged in the Bell Tavern property. For illustration, we may mention, that it would be sufficient identification to prove that it is the lot on which the frame stable stood ; or that it is embraced within the McKay, Connally or Phillips sales. Or it would be sufficient to raise a *prima facie* case of right against one without title, to show the premises were once occupied as part of the "Bell Tavern property," either as part of the stable, or as cowlot, or in any other way, connected with the hotel, accompanied with such acts as indicate claim of ownership. The sufficiency of such testimony, however, would present an issue of fact, upon which the jury would have to pronounce. It can not be affirmed, as matter of law, nor predicated of the mere documentary evidence, that plaintiffs have shown title to the rear forty feet of the lot in controversy. A charge, as to this part of the premises, can not be legally given, without hypothesis. If, however, the jury find from the evidence, either that the said forty feet extension is embraced in either one of the said deeds, or that it had been previously possessed as part of the "Bell Tavern property," accompanied with acts indicating claim of ownership, this will make good the *prima facie* right of plaintiffs, and devolve on the defendant the duty and necessity of making good one of his defenses.

In that part of the general charge first excepted to, the court committed no error, of which appellant can complain. As we have heretofore shown, the deed from Caldwell to Yeatman conveys entirely that part of lot seventeen which had come from Acklen's deed down to him, and the court should have so instructed the jury. The finding of the jury being what the court itself should have announced, the appellant is not injured by the error of the court, in submitting the question to the jury.—1 Brick. Dig. 780, § 96; *Jones v. Pullen,* 66 Ala. 306.

In the second paragraph of the general charge excepted to, the court committed an error. It can not be affirmed, as mat-

ter of judicial interpretation, that the deed from Wood to Kinkle "embraces the forty feet extending east" of the Jamison lot. It may embrace it, but that depends on the ascertainment of facts to be found by the jury, as we have shown above. This is only one clause of a charge, which is otherwise free from error. The charge, however, consists of but one sentence, connected and dependent throughout, and we think the exception sufficiently specific.

The charge given at the instance of plaintiffs is in accordance with our previous rulings, and is free from error.

The first of the written charges asked by defendant, as shown in this record, is obscure, and was rightly refused on that account. But we do not think it asserts a correct legal proposition. The mere fact that the owner of real estate "has not had possession of it, claiming title to it," for more than twenty years, in the absence of any adversary claim or possession, does not work a forfeiture of the title.

The next charge asked asserts, as matter of judicial construction, that the part of the lot which is more than seventy-three feet from Gallatin street, is not embraced in any of the deeds, until the conveyance was made by the marshal to Walker. This was rightly refused. There was, at least, some testimony tending to show the contrary; and the plaintiffs had the right to have it considered by the jury.

The remaining two charges asked were rightly refused. They are based on an erroneous construction of Caldwell's deed to Kinkle, as we have shown above.

All other questions are disposed of by our rulings on former appeals in this case.—60 Ala. 582; 71 Ala. 260; 72 Ala. 546; 75 Ala. 241.

Reversed and remanded.